PEOPLE v STEELE

Docket No. 280509. Submitted April 14, 2009, at Grand Rapids. Decided
    April 21, 2009, at 9:05 a.m.
    A Montcalm Circuit Court jury convicted Larry D. Steele of eight counts
        of first-degree criminal sexual conduct and six counts of second-
        degree criminal sexual conduct for sexual activity involving three
        victims he described as his adopted grandchildren. The defendant
        described the victims' grandmother as his common-law wife or
        girlfriend. Before trial, the court, Charles H. Miel, J., had granted the
        prosecution's motion to exclude the testimony of a defense expert
        witness and ruled that the prosecution could introduce under MRE
        404(b) evidence of several acts involving the victims' mother and
        their aunt. The court also denied the defendant's motion for an
        adjournment after the prosecution disclosed that it would not call the
        grandmother as a witness. After the defendant presented character
        witnesses, the prosecution offered rebuttal testimony that included
        the defendant's reputation. At sentencing, the defendant objected to
        the scoring of offense variable (OV) 8 (asportation of the victim), OV
        10 (exploitation of a victim's vulnerability), and OV 19 (covering, in
        part, interference with the administration of justice). The court did
        not revise the points assessed for those OVs and sentenced the
        defendant to prison terms of 18 years and 9 months to 50 years for
        the first-degree criminal sexual conduct convictions and 10 to 15
        years for the second-degree criminal sexual conduct convictions. The
        defendant appealed.

    The Court of Appeals held:

    1. The trial court did not abuse its discretion by admitting the
    evidence of prior bad acts. Evidence of other crimes, wrongs, or
    acts is admissible under MRE 404(b)(1) if (1) the proponent seeks
    to prove motive, opportunity, intent, preparation, scheme, plan, or
    system in doing an act and does not offer the evidence to prove the
    person's character in order to show action in conformity with that
    character, (2) the evidence is relevant to an issue of fact that is of
    consequence at trial, and (3) under MRE 403, the danger of unfair
    prejudice does not substantially outweigh the probative value of
    the evidence. To support an inference of a common plan, scheme,
    or system, there must be such a concurrence of common features

between the charged offense and the similar misconduct that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design. Distinctive and unusual features are not required to establish the existence of a common design or plan. The testimony of the victims' mother and their aunt about defendant's engaging in sexual acts and less extensive forms of sexual touching involving them are logically seen as part of a general plan, scheme, or design.

2. The trial court did not abuse its discretion by excluding the testimony of the defendant's expert witness. The expert would have testified that he tested the defendant and that the defendant did not fit the profile, or display the characteristics, of having a personality consistent with pedophilia or being a sexual predator. The proposed testimony regarding the defendant's sex-offender profile, as developed from psychological testing, was neither sufficiently scientifically reliable nor supported by sufficient scientific data. The proposed testimony would not have assisted the jury to understand the evidence or determine a fact at issue, and the danger of unfair prejudice substantially outweighed any arguable probative value. Excluding the evidence did not deny the defendant his constitutional right to present a defense.

3. MCR 767.40a(1) requires the prosecution to attach to the information a witness list that includes the names of known witnesses who might be called at trial and all res gestae witnesses known to the prosecution or the investigating officers. Under MCL 767.40a(4), the prosecution may add a person to, or delete a person from, the list upon leave of the court for good cause shown. The trial court allowed the prosecution to delete the grandmother from the list, and the defendant, who did not object on the record, failed to prove that good cause was lacking.

4. MCL 767.40a(5) requires the prosecution or the investigative law enforcement agency to provide a defendant reasonable assistance as necessary to locate and serve process on a witness. The request, however, must be in writing and made no less than 10 days before trial unless the court directs otherwise. The defendant's counsel did not request assistance until four days before trial, despite having been notified 14 days before trial that the prosecution would not be calling the grandmother as a witness. The trial court did not abuse its discretion when it declined to direct the prosecution to assist the defendant in locating the grandmother.

5. The trial court did not abuse its discretion by denying the defendant's motion for an adjournment. Defense counsel admitted that he had unsuccessfully tried to locate the grandmother months

before and failed to show how an adjournment would have helped him find her.

6. The defendant was not denied a fair trial by the trial court's refusal to give CJI2d 5.12, the jury instruction concerning a missing witness. The instruction is appropriate if the prosecution fails to secure the presence at trial of a listed witness who has not been properly excused. Because the trial court did not err when it permitted the prosecution to strike the grandmother from its witness list, declining to give the instruction was also not error.

7. Once a defendant presents testimony or other evidence that he or she has a good character trait, the defendant has opened the door to further testimony, and the prosecution may rebut the defendant's evidence with contrary evidence. The trial court did not abuse its discretion by allowing the rebuttal testimony.

8. The defendant sought to admit the testimony of his sister to impeach the victims' mother. The testimony in question was that the victims' mother and their father had expressed concern that the grandmother was spending the grandmother's money on the defendant. This evidence would have supported the defense theory that the mother had the victims falsely accuse the defendant so that the defendant would no longer be able to receive money from the grandmother. This extrinsic evidence did not involve a collateral matter, so it was admissible as a matter of law, and the trial court abused its discretion by excluding it. The error was merely evidentiary error, however, and did not rise to the level of a deprivation of the defendant's constitutional right to present a defense. The defendant was able to present the defense by cross-examining witnesses, and the error was harmless in light of the strong evidence against him.

9. The scoring of the offense variables did not violate the defendant's due process rights. There was evidence supporting the points assessed. With regard to OV 8, the defendant asported the victims to places, or situations, of greater danger. With regard to OV 10, the defendant exploited the victims' vulnerability. They were readily susceptible to injury and persuasion because of their tender ages and his authority as their grandparent. The defendant engaged in less intrusive and less highly sexualized forms of sexual touching to desensitize them to future sexual contact. With regard to OV 19, the defendant told the victims not to disclose his acts or he would go to jail. MCL 777.49 does not require a threat to a victim before points can be assessed for OV 19. The defendant's admonitions to the victims were a clear and obvious attempt to diminish their willingness and ability to obtain justice.

Affirmed.

1. EVIDENCE — OTHER-ACTS EVIDENCE — PRIOR BAD ACTS — COMMON PLAN, SCHEME, OR DESIGN BY A DEFENDANT.

For evidence of prior acts to be admissible under MRE 404(b)(1) to prove a plan, scheme, or system in doing an act, there must be such a concurrence of common features that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design; the evidence of the uncharged acts need only support the inference that the defendant employed a common plan in committing the charged offense; distinctive and unusual features are not required to establish the existence of a common design or plan.

2. WITNESSES — CRIMINAL LAW — RES GESTAE WITNESSES — PROSECUTING ATTORNEY'S DUTY TO ENDORSE WITNESSES — DELETING WITNESSES FROM PROSECUTION'S ENDORSED LIST.

The prosecution must attach to the information a witness list that includes the names of known witnesses who might be called at trial and all res gestae witnesses known to the prosecution or the investigating law enforcement officers; the prosecution may add a person to, or delete a person from, that list at any time upon leave of the court for good cause shown or by stipulation (MCL 767.40a[1], [4]).

3. SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLES — INTERFERENCE WITH THE ADMINISTRATION OF JUSTICE — THREATS MADE TO VICTIMS.

A court scoring offense variable 19 under the sentencing guidelines, which concerns in part interference or attempted interference with the administration of justice, need not find that the defendant threatened a victim before points can be assessed for that variable (MCL 777.49).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Andrea Krause*, Prosecuting Attorney, and *William Molner*, Assistant Attorney General, for the people.

State Appellate Defender (by *Chari K. Grove*) for the defendant.

Before: WILDER, P.J., and METER and SERVITTO, JJ.

PER CURIAM. Defendant appeals by right his convictions, following a jury trial, of eight counts of first-

degree criminal sexual conduct, MCL 750.520b(1)(a), and six counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a), all for sexual activity with minors under 13 years of age. Defendant also challenges his sentences. We affirm.

The crimes involved three grandchildren of the woman whom defendant alternately described as his common-law wife and his girlfriend. Defendant described himself as the girls' adopted grandfather.

Before trial, the prosecution filed a motion in limine to exclude the testimony of a defense expert, Dr. Andrew Barclay, who would have testified that he tested defendant and that defendant did not fit the profile, or display the characteristics, of having a personality consistent with pedophilia or being a sexual predator. The prosecution argued that the testimony was inadmissible character evidence. The trial court agreed and granted the motion.

Also before trial, the prosecution filed a notice of intent under MRE 404(b) to present against defendant other acts testimony by the victims' mother and the victims' aunt, as well as evidence of uncharged acts by defendant against the victims. The prosecution argued that these other acts were similar to the charged assaults and that all the other acts were admissible to show defendant's common scheme, intent, and motive. Defendant objected on the ground that the other incidents were not similar. The trial court ruled that some of the proposed other acts evidence was inadmissible, but touching incidents involving the victims' mother and aunt were admissible to show a common plan or scheme.

Five days before trial, defendant filed a motion to adjourn trial because the prosecutor, in the previous week, had disclosed that she no longer intended to call the victims' grandmother as a witness. Defense counsel

argued that he had then hired a process server, but the process server was unable to locate the grandmother. The trial court denied the motion.

At trial, the prosecution presented the testimony of the three victims, who all testified that while they were under 13 years of age, defendant committed multiple acts of sexual conduct against them. Some of the acts related by the victims, and objected to by defendant, had not been charged.

Consistently with the trial court's prior ruling, the victims' aunt and their mother testified about "other acts" committed by defendant. The victims' aunt testified that when she was about 18, defendant came into her bathroom and put his hand up the back of her shirt and down her pants and that four years before, defendant had taken her bathing suit top and squeezed water out of it while she was wearing it. The aunt also recalled another incident when she and defendant were riding a dirt bike and he had his hands on her thighs, very near her genitalia. The victims' mother testified that in 2002, when she was sick with influenza, defendant sat on the couch with her, rubbed her arms and legs, and tried to put his hands up her shirt.

On cross-examination, the defense asked the victims' mother if she had ever expressed concern to defendant's sister that defendant was only after the grandmother for her money. The victims' mother denied having said that, but explained conversations she had had with the sister concerning what part money played in the relationship between defendant and the grandmother. The defense also cross-examined the victims' mother about how much money the grandmother had spent on defendant.

The victims' father testified that the grandmother had inherited $500,000, that she had loaned defendant a great deal of money, and that she had spent about

$30,000 making improvements to his property. Defendant cross-examined the victims' father regarding the inheritance, the grandmother's gifts to the victims' family, and the grandmother's gifts to defendant.

In his case-in-chief, defendant presented witnesses attesting to his allegedly good character. In rebuttal, the prosecutor offered testimony from the victims' mother that defendant, when living in his previous city of residence, had gained a reputation in his church for inappropriate contact with young girls in the congregation and that the victims' mother and her sisters considered him a sexual deviant. The trial court overruled defendant's objections to this testimony.

The jury returned guilty verdicts on all 14 counts. At sentencing, the trial court overruled defense objections to the scoring of three offense variables and sentenced defendant to multiple terms of 18 years and 9 months to 50 years of imprisonment for the first-degree criminal sexual conduct crimes and terms of 10 to 15 years for the second-degree criminal sexual conduct crimes.

We first consider whether the admission of prior acts evidence denied defendant a fair trial and find no error. This Court reviews for an abuse of discretion a trial court's decision to admit or exclude evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). The abuse of discretion standard of review applies to decisions regarding admission of similar acts evidence. *People v McMillan*, 213 Mich App 134, 137; 539 NW2d 553 (1995). Questions of law are reviewed de novo. *People v Swafford*, 483 Mich 1, 7; 762 NW2d 902 (2009). Questions whether a defendant was denied a fair trial, or deprived of his liberty without due process of law, are reviewed de novo. See *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

MRE 404(b)(1) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. *It may, however, be admissible for other purposes, such as proof of* motive, opportunity, intent, preparation, *scheme, plan, or system in doing an act,* knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [Emphasis added.]

For evidence of other crimes, wrongs, or acts to be admissible under MRE 404(b)(1), the proponent of the evidence must show three things: (1) that the other acts evidence is for a proper purpose (other than to show character and action in conformity therewith), (2) that the evidence is relevant to an issue of fact that is of consequence at trial, and (3) that, under MRE 403, the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. *People v Sabin (After Remand)*, 463 Mich 43, 55-56; 614 NW2d 888 (2000).

In *Sabin*, our Supreme Court held that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Id.* at 63. There must be *such a concurrence of common features* that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design. *Id.* at 63-64. The evidence of uncharged acts "needs only to support the inference that the defendant employed the common plan in committing the charged offense." *People v Hine*, 467 Mich 242, 253; 650 NW2d 659 (2002). "[D]istinctive and unusual features are not required to establish the existence of a common design or plan." *Id.* at 252-253.

Here the other acts evidence had a concurrence of common features so that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design. One aspect of defendant's scheme, plan, or system was to engage in touching women and girls, usually less extensive forms of sexual touching, even when in public areas where it might be seen. Some of the other acts evidence consisted of other sexual acts in these kinds of public areas, including in the living room, the bathroom, or the bedroom, where there were spaces in the door through which others might see. While there were *some* dissimilarities between the charged acts and the other bad acts, a high degree of similarity is not required, nor are distinctive or unusual features required to be present in both the charged and the uncharged acts. *Id.* at 252-253. Accordingly, the trial court did not abuse its discretion in admitting the evidence under MRE 404(b).

Defendant also contends that he was denied his constitutional right to present a defense when the trial court excluded his defense expert. We find no error.

This Court reviews for an abuse of discretion a trial court's decision to admit or exclude expert witness testimony. *People v Matuszak*, 263 Mich App 42, 47; 687 NW2d 342 (2004). This Court also reviews for an abuse of discretion a trial court's decision on an expert's qualifications. See *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006); *People v Peterson*, 450 Mich 349, 363 n 8, 379; 537 NW2d 857 (1995). This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense. See *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

MRE 702 governs the admissibility of expert testimony and provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to

understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under MRE 702, a trial court must ensure that all expert opinion testimony, regardless of whether it is based on novel science, is reliable. *Gilbert v Daimler-Chrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004). "MRE 702 requires the trial court to ensure that each aspect of an expert witness's proffered testimony —*including the data underlying the expert's theories and the methodology by which the expert draws conclusions from that data*—is reliable." *Id.* at 779 (emphasis added). "[R]eference in MRE 702 to 'scientific' evidence 'implies a grounding in the methods and procedures of science,' and the rules's reference to 'knowledge' 'connotes more than subjective belief or unsupported speculation.' " *Id.* at 781 (citations omitted).

This Court addressed this same issue, also involving Dr. Barclay, and essentially the same criminal charges in *People v Dobek*, 274 Mich App 58; 732 NW2d 546 (2007). In that case, the trial court excluded Dr. Barclay's testimony "because it found a lack of scientific reliability in the process of identifying sex offenders through psychological testing and because the testimony would not assist the jury in its function of deliberating on the issue of guilt . . . ." *Id.* at 93. This Court also concluded that Dr. Barclay's proposed testimony regarding the defendant's sex-offender profile, as developed from psychological testing, was neither sufficiently scientifically reliable nor supported by sufficient scientific data. *Id.* at 94-95. Further, the panel

concluded that Dr. Barclay's proposed testimony would not have assisted the trier of fact to understand the evidence or to determine a fact in issue. *Id.* at 95. "[R]ather, any arguable probative value . . . would be substantially outweighed by the danger of unfair prejudice to the prosecution, confusion of the issues, or misleading the jury." *Id.* at 95. After extensive and detailed analysis, *Dobek* concluded that the trial court did not err by granting the prosecution's motion to exclude Dr. Barclay's proposed testimony. *Id.* at 92-104.

By the same token, the prosecution here filed a pretrial motion in limine to exclude the similar testimony of Dr. Barclay, who would have testified about the same things: that he tested defendant and that defendant did not fit the profile, or display the characteristics, of having a personality consistent with pedophilia or being a sexual predator. Although *Dobek* had not yet been decided when the trial court made its ruling in this case, the trial court was prescient, and reached the same conclusion. *Dobek* is on point and indistinguishable. We find no abuse of discretion.

Defendant asserts that he was denied a fair trial when the trial court permitted the prosecution to delete the victims' grandmother from its witness list. We disagree. This argument is unpreserved because defendant did not object on the record to the prosecution's deletion, nor did he bring a motion for a posttrial evidentiary hearing or for a new trial. *People v Dixon*, 217 Mich App 400, 409; 552 NW2d 663 (1996).

Statutory construction presents an issue of law that this Court reviews de novo. *People v Keller*, 479 Mich 467, 473-474; 739 NW2d 505 (2007). A trial court's decision to permit the prosecution to delete a witness from its endorsed witness list is reviewed for an abuse of discretion. *People v Burwick*, 450 Mich 281, 291; 537

NW2d 813 (1995). Finally, "an unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights." *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

Michigan law requires the prosecution to attach a witness list to the information and to include in it the names of known witnesses who might be called at trial and all res gestae witnesses known to the prosecution or to investigating law enforcement officers. MCL 767.40a(1). The prosecution may add a person to, or delete a person from, that witness list at any time "*upon leave of the court and for good cause shown* or by stipulation . . . ." MCL 767.40a(4) (emphasis added).

The prosecution was granted permission by the trial court, in chambers, to remove the witness from its witness list at the pretrial conference on April 25, 2007. The permission to remove the witness from its list constitutes the "leave of the court" required by MCL 767.40a(4). Moreover, defendant makes the conclusory argument that the prosecution did not show good cause in support of its request to remove the witness from its list and fails to present proof that good cause was lacking. Therefore, we reject defendant's argument that the trial court abused its discretion by permitting the witness to be deleted from the prosecution's witness list. In addition, because there was no error, there was also no plain error affecting defendant's substantial rights. *Pipes*, 475 Mich at 274.

Defendant next argues that he was denied a fair trial when the trial court failed to require the prosecution to assist the defense in locating the victims' grandmother so that the defense could subpoena her to testify as a witness in the case. We disagree.

The "prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or

defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness." MCL 767.40a(5). However, the "request for assistance *shall* be made *in writing* by defendant or defense counsel *not less than 10 days before the trial* of the case or at such other time as the court directs." *Id.* (emphasis added).

Defendant did not request assistance from the prosecution in locating the witness until May 5, 2007, four days before trial. While defendant was not advised until April 25, 2007, that the prosecution would not be calling the witness in its case-in-chief, this advice constituted notice 14 days in advance of trial. Rather than request the assistance of the prosecution at that time, defendant instead expressed his intention to secure his own process server to subpoena the witness for trial. Accordingly, the trial court did not abuse its discretion when it declined to direct the prosecution to assist the defendant in locating the witness, given that the request for this assistance was made only four days before trial.

Defendant next contends that he was denied a fair trial when the trial court denied his motion to adjourn trial to allow him additional time to locate the victims' grandmother and subpoena her to testify at trial. We disagree. A trial court's rulings on motions for a continuance are reviewed for an abuse of discretion. *People v Echavarria*, 233 Mich App 356, 368; 592 NW2d 737 (1999).

Defense counsel admitted to the trial court that he had unsuccessfully attempted to locate the witness months before requesting the adjournment. Defendant fails to show how an adjournment of trial would have assisted him in finding a witness whom he had previously had no success in locating. Accordingly, we find that the trial court did not abuse its discretion by denying the motion to adjourn, and further find that

defendant has failed to show plain error affecting his substantial rights. *Pipes*, 475 Mich at 274.

Even if the trial court abused its discretion in denying the motion to adjourn, the evidence in support of defendant's guilt was very strong. The testimony of the victims, in particular, was specific and powerful. And defendant's proposed defense, that the victims' mother influenced her children to make false accusations of abuse in order that the grandmother would not spend more of her inheritance on defendant, is so implausible that no reasonable jury would have accepted it in the face of the convincing testimony of the victims. Accordingly, any such error was harmless and not error affecting defendant's substantial rights.

Defendant also argues that he was denied a fair trial when the trial court denied his request for the missing witness instruction, CJI2d 5.12. We disagree. This Court reviews for an abuse of discretion a trial court's determination whether the missing witness instruction is appropriate. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004).

The missing witness instruction may be given "if a prosecutor fails to secure the presence at trial of a listed witness who has not been properly excused." *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003). Since we have concluded that there was no error when the trial court permitted the prosecution to strike the witness from its list, we also conclude that there was no error when the trial court declined to give the missing witness instruction.

Next, defendant claims that the admission of "surprise" rebuttal evidence regarding defendant's character deprived defendant of a fair trial. We find no error.

We do not disturb a trial court's decision regarding the admission of rebuttal testimony absent an abuse of

discretion. *People v Humphreys*, 221 Mich App 443, 446; 561 NW2d 868 (1997). We review questions of law, and constitutional questions, de novo. *Swafford*, 483 Mich at 7; *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We also review de novo questions whether a defendant was denied a fair trial or deprived of liberty without due process of law. See *Schumacher*, 276 Mich App at 176 (due process claim).

MRE 803(21) is a hearsay exception that allows admission of evidence of a person's reputation regarding character among associates or in the community. Accordingly, there is no hearsay basis for reversing the trial court's admission of the testimony in question.

Further, once the defendant presents testimony or other evidence that he or she has a good character trait, the defendant has opened the door; the prosecutor may then walk through it, armed with contrary evidence, on rebuttal, and the fact that the contrary evidence is damaging to the defense does not equate with error. *Lukity*, 460 Mich at 498-499. A prosecutor is fully entitled to challenge a defendant's evidence of good character, either on cross-examination or through extrinsic evidence in rebuttal. *People v Bouchee*, 400 Mich 253, 262; 253 NW2d 626 (1977). Here defendant opened the door. Accordingly, the trial court did not abuse its discretion by allowing the rebuttal testimony.

Defendant's argument that the prosecution should have presented the testimony regarding his bad reputation in his former church community in its case-in-chief lacks merit. Defendant had not yet opened the door on that issue. And that evidence was not specific and definite enough for the prosecution to have admitted it as evidence of other crimes, wrongs, or acts under MRE 404(b).

Finally, regarding this issue, defendant argues that the prosecution should have disclosed the highly in-

flammatory reputation evidence before the last day of trial. This argument lacks merit. Defendant cannot have been oblivious to the fact that if he introduced evidence of good character, the prosecutor might rebut it. Given this knowledge, defendant could have brought a motion in limine, before trial, to test the admissibility of any contrary evidence to rebut his character evidence, and by failing to do so, ran the risk of such introduction. For these reasons, the trial court did not abuse its discretion by admitting the rebuttal evidence of defendant's reputation or bad character.

Defendant also challenges the trial court's refusal to allow defendant to use extrinsic evidence (testimony by his sister) to impeach a prior witness (the victims' mother) and claims that this refusal deprived him of a fair trial. We disagree.

Evidentiary decisions are reviewed for an abuse of discretion. *Lukity*, 460 Mich at 488. Constitutional questions are reviewed de novo. *LeBlanc*, 465 Mich at 579.

The prosecution concedes that because prior inconsistent statements are not used to prove their truth (that is, are not used for a substantive purpose), but are used to impeach the credibility of the witness, they are not hearsay and are therefore admissible. But the prosecution argues that even if the testimony of defendant's sister regarding alleged statements by the victims' mother evidenced a prior inconsistent statement, to be used for a nonsubstantive purpose (to prove lack of credibility of the mother), the sister's testimony is still inadmissible because it involved a collateral matter, citing *People v Rosen*, 136 Mich App 745, 758; 358 NW2d 584 (1984). This argument by the prosecution lacks merit.

Michigan common law does not define the scope of "collateral matters," nor do our rules of evidence.

Therefore, we repair to a dictionary definition.[1] Because "collateral matter" is a legal term of art, we use a legal dictionary.[2] Black's Law Dictionary (8th ed) defines collateral matter as "[a]ny matter on which evidence could not have been introduced for a relevant purpose." Under this definition, the proposed impeachment of the victims' mother, by the later testimony of defendant's sister, was not on a collateral matter because it was an issue in the case whether the victims' mother had induced her daughters to perjure themselves by falsely accusing defendant.

A criminal defendant has both state and federal constitutional rights to present a defense, which rights include the right to call witnesses. *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967); *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), citing US Const, Am VI and Const 1963, art 1, § 20. The extrinsic evidence in question was testimony by defendant's sister that the victims' mother and father had expressed concern that the victims' grandmother was spending her (the grandmother's) inheritance on defendant. This evidence would have tended to support one of defendant's defenses, namely, that the victims' mother put her children up to falsely accusing defendant of statutory rape so that defendant would no longer be able to receive the largess of the grandmother. While implausible, this was one of defendant's defenses, and he had a right to try to prove it. *Yost*, 278 Mich App at 379. Extrinsic evidence tending to prove his theory is

---

[1] Compare *People v Althoff*, 280 Mich App 524, 535; 760 NW2d 764 (2008) ("Every word or phrase of a statute should be accorded its plain and ordinary meaning, but, if the legislative intent cannot be determined from the statute itself, dictionary definitions may be consulted.").

[2] When considering "a legal term of art, resort to a legal dictionary to determine its meaning is appropriate." *People v Jones*, 467 Mich 301, 304-305; 651 NW2d 906 (2002).

not evidence on a collateral matter. Accordingly, this extrinsic evidence was admissible as a matter of law, and the trial court abused its discretion by excluding it.

The next question is whether the error was constitutional error or merely evidentiary error. We hold that the error was merely evidentiary error that did not rise to the level of a constitutional deprivation. Defendant was able to present the defense in question by cross-examining the victims' mother and father. Defendant was not totally precluded from presenting this defense because there was testimony showing, first, that the grandmother had inherited $500,000 and, second, that she was spending substantial sums on defendant. Accordingly, defendant was free to argue to the jury that he was falsely accused, at the behest of the victims' mother, out of financial motives. The exclusion of the extrinsic impeachment evidence was merely evidentiary error.[3] The evidentiary error of excluding the extrinsic evidence was harmless in light of the strong evidence that defendant did repeatedly rape his victims.

---

[3] Even if the error had been constitutional error, it would have been nonstructural. A structural error is a fundamental constitutional error that defies analysis by harmless error standards. *People v Miller*, 482 Mich 540, 556; 759 NW2d 850 (2008), quoting *Neder v United States*, 527 US 1, 7; 119 S Ct 1827; 144 L Ed 2d 35 (1999). For nonstructural constitutional error, the standard for determining whether reversal is required is whether the error was harmless beyond a reasonable doubt. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). Here, any constitutional error was harmless beyond a reasonable doubt. The defense in question was so implausible that no reasonable jury would have found it persuasive. Any doubt resulting from this particular defense would have been unreasonable (and thus not an adequate basis for an acquittal). What is more, the evidence presented by the prosecution was very strong. The three complainants testified specifically and convincingly about being repeatedly subjected to statutory rape by defendant. Thus, any constitutional error resulting from excluding the proposed extrinsic impeachment evidence was harmless beyond a reasonable doubt.

Finally, defendant asserts that he suffered a deprivation of his liberty without due process of law under the state and federal constitutions because three offense variables were misscored and therefore he was sentenced on the basis of inaccurate information. We disagree.

Constitutional questions are reviewed de novo. *LeBlanc*, 465 Mich at 579. Questions whether a defendant was deprived of liberty without due process of law are reviewed de novo. See *Schumacher*, 276 Mich App at 176. This Court reviews a trial court's scoring decision under the sentencing guidelines " 'to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score.' " *People v Wilson*, 265 Mich App 386, 397; 695 NW2d 351 (2005) (citation omitted). A trial court's scoring decision "for which there is any evidence in support will be upheld." *People v Endres*, 269 Mich App 414, 417; 711 NW2d 398 (2006). This Court reviews "de novo as a question of law the interpretation of the statutory sentencing guidelines." *Id.* An appellate court must affirm minimum sentences that are within the recommended guidelines range, except when there is an error in scoring the sentencing guidelines or inaccurate information was relied on in determining the sentence. MCL 769.34(10); *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004).

For offense variable (OV) 8, if a victim was asported to another place, or situation, of greater danger, the sentencing court assigns 15 points. MCL 777.38(1)(a). "Asportation" is not defined in the sentencing guidelines statutes. *People v Spanke*, 254 Mich App 642, 647; 658 NW2d 504 (2003). But it does not require the use of force. *Id.*

Defendant took one of his victims to a trailer on his property, where he raped her. Defendant also took one of his victims onto a tree stand, where he sexually

assaulted her. Finally, defendant took one of his victims riding on a dirt bike, far away from the house, where he again assaulted her.

The trailer, the tree stand, and the dirt-bike destination are all places or situations of greater danger because they are places where others were less likely to see defendant committing crimes. Given this evidence, the trial court's scoring decision on OV 8 is upheld. *Id.* at 647-648.

Next, OV 10 was assessed at 15 points for exploitation of a victim's vulnerability because defendant groomed his victims. MCL 777.40(1)(a) requires assessment of 15 points if "[p]redatory conduct was involved." The statute defines "predatory conduct" to mean "preoffense conduct directed at a victim for the primary purpose of victimization." MCL 777.40(3)(a).

*People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008), provided a three-part test for predatory conduct:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

> (3) Was the victimization the offender's primary purpose for engaging in the preoffense conduct?

> *If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 because the offender engaged in predatory conduct.*

Here the victims testified about numerous sexual assaults going on for a very long time before disclosure. Accordingly, there was evidence that defendant engaged in preoffense conduct.

Second, defendant engaged in "grooming." Grooming refers to less intrusive and less highly sexualized forms

of sexual touching, done for the purpose of desensitizing the victim to future sexual contact. Defendant's grooming was directed at his victims and not at anyone else. Moreover, defendant's victims, his adoptive grandchildren, suffered from a readily apparent susceptibility to injury and persuasion because of their tender age and his authority over them as a grandparent.

Third, the grooming behavior by defendant was, as the trial court found, for victimization. There was evidence that the purpose of grooming was to desensitize the victims to the impropriety of the sexual contact, in order to escalate it over time. By beginning with milder forms of sexual contact, and then progressing to more intense sexual contact and penetration, defendant demonstrated that his intent and purpose were to victimize the complainants. Thus, there was, at the least, some evidence to support the trial court's scoring decision. Therefore, the trial court's scoring decision on OV 10 is affirmed. See *Endres*, 269 Mich App at 417.

Finally, defendant argues that the trial court incorrectly assessed 10 points for OV 19 (covering, in part, interference with the administration of justice). This score was given because defendant told his victims not to disclose his acts or he would go to jail. Defendant does not deny the statements. Rather, he argues that he stated "an obvious fact" and the statements were "not even a threat." Defendant's arguments lack merit.

MCL 777.49 governs OV 19 and allows for 10 points to be assessed when the "offender otherwise interfered with or attempted to interfere with the administration of justice." The phrase "interfered with or attempted to interfere with the administration of justice" is broad. *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004). It includes acts constituting obstruction of justice, but is not limited to those acts. *Id.*

Defendant's argument that he did not threaten the victims is, even if it were true, beside the point. A threat is not required. MCL 777.49. And defendant's argument that he was merely stating a fact to his victims rings hollow. Defendant's unrebutted statements to his victims have an unmistakable meaning: Do not tell anyone. Defendant's admonitions to his victims were a clear and obvious attempt by him to diminish his victims' willingness and ability to obtain justice.

In conclusion, (1) the admission of prior acts evidence did not deny defendant a fair trial, (2) the exclusion of a defense expert did not deny defendant his right to present a defense, (3) defendant was not deprived of a fair trial when the prosecution was permitted to delete a witness from its witness list before trial and was not required to lend assistance to the defendant in locating that witness, (4) defendant was not deprived of a fair trial when the trial court denied his motion to adjourn the trial, (5) defendant was not deprived of a fair trial when the trial court denied his request for the missing witness instruction, (6) the admission of rebuttal evidence regarding defendant's character did not deprive defendant of a fair trial, (7) while the trial court erred by denying defendant the opportunity to impeach a witness with extrinsic evidence that was not on a collateral matter, the error was evidentiary only and was harmless, and (8) defendant's due process rights were not violated by the trial court's scoring of offense variables for purposes of sentencing because there was evidence supporting the scores.

Affirmed.