*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RYAN JAMES WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
June 17, 2026
11:24 AM

No. 371219
Barry Circuit Court
LC No. 22-000523-FH

Before: GADOLA, C.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

Defendant, Ryan James Williams, pleaded no contest to the crime of embezzlement of $100,000 or more, MCL 750.174(7).[1] He was resentenced[2] to 60 to 240 months' imprisonment. He filed an application for leave to appeal, and this Court denied the application for leave to appeal. *People v Ryan James Williams*, unpublished order of the Court of Appeals, entered July 12, 2024 (Docket No. 371219). Defendant applied for leave to appeal with our Supreme Court, and after directing the prosecutor to file a response, it remanded the case to this Court "for consideration as on leave granted." *People v Williams*, ___ Mich ___; 26 NW3d 833 (2025). On appeal, defendant protests the score of 10 points for Offense Variable (OV) 19 (interference with the administration of justice), MCL 777.49(c), contending that the conduct was committed by defendant's wife after his sentencing, and therefore, did not factually support the score for interference with the administration of justice. He further contends that the upward departure and the extent of the

---

[1] MCL 750.174(7) states, "If the money or other personal property embezzled has a value of $100,000.00 or more, the person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $50,000.00 or 3 times the value of the money or property embezzled, whichever is greater, or both imprisonment and a fine."

[2] Defendant was initially sentenced to 120 to 240 months' imprisonment on January 12, 2023. In light of the parties' agreement to resentence, the trial court granted the request.

departure from the sentencing guidelines resulted in an unreasonable and disproportionate sentence. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with embezzlement of $100,000 or more, MCL 750.174(7), as an agent, servant, or employee of Flexfab, LLC (Flexfab), arising from his alleged improper conversion of the principal's money or other property. On October 26, 2022, defendant pleaded no contest to the charged offense and acknowledged that there was no plea agreement. The trial court stated that defendant pleaded no contest because of potential civil liability but advised that, under the law, it was treated as essentially a guilty plea. After being sworn by the court, defendant affirmed his plea, his signature on the advice of rights form, the rights that he was waiving because of his plea, and the lack of any force, threats, or promises to induce agreement to the plea. For the factual basis for the plea, the prosecutor noted that between 2016 and 2022, defendant, as an employee of Flexfab, had access to a company credit card and other accounts. Defendant used those corporate resources to order personal goods for his own benefit, instead of for the company. Thus, defendant converted the company money by using its funds to pay for goods that he ordered. When questioned about the factual grounds, defendant and defense counsel had no additional facts to add and acknowledged that the factual basis satisfied the elements of the crime. The trial court advised defendant to fill out the interview form with the Michigan Department of Corrections for preparation of the sentencing report. The trial court then advised defendant to "keep your nose clean" before the sentencing hearing and to gather "every single item" purchased with corporate funds to be "turned back in." The trial court informed defendant that the more effort he applied to those goals would "affect the sentencing in this case."

On January 12, 2023, the sentencing hearing was held. Defense counsel acknowledged review of the presentence investigation report (PSIR) and had no additions, corrections, or deletions to the sentence guidelines as scored. He stated that the guidelines were 12 to 20 months. Addressing defendant's assets that included a home and two cars, the court was apprised that defendant had traded in his Tesla vehicle for a Chevy Colorado valued at $32,000. The prosecutor noted that Flexfab had submitted a request for restitution of $565,922, but defendant disputed that amount and estimated embezzlement of about $320,000. Flexfab was in the process of seeking reimbursement from their insurer but was responsible for the payment of a deductible. Therefore, a restitution hearing was requested.

The prosecutor expressed that Flexfab representatives were not requesting defendant's incarceration. Rather, it sought to have its money returned and to prevent defendant from being employed in the information technology or security field. Although the prosecutor normally advocated in accord with the victim's wishes, he stated that the conduct at issue was outrageous. Defendant spent an absurd amount of money on frivolous and luxury items. Specifically, in defendant's employment as a senior desktop architect, he had access to a company credit card and the Amazon account. Defendant used those for his own purposes, making thousands of purchases, until his embezzlement was uncovered years later. The Amazon business account charges were estimated to be $336,198. And the company credit card included personal purchases approximated at $229,724. Defendant submitted falsified documents for over 2,800 items purchased between

2015[3] and his termination in May 2022. The items included many video games, twelve laptop computers, televisions, electronic blinds that were voice-activated, an above-ground pool, a bidet, and a $650 trashcan. Defense counsel disputed the quantity of some of the items.

A search of defendant's home for the merchandise had not occurred. But defense counsel represented that defendant went through his residence and boxed up several items. The trial court noted that the guidelines were advisory and the embezzlement felony was categorized as a 20-year penalty. A question was also raised about defendant's wife's knowledge because the items purchased far exceeded defendant's income. And the trial court questioned whether defendant declined to return the items premised upon the belief that he would serve "some short jail time or some short prison time to not have to disrupt [his] household and all the nice stuff [he had] in there now for [his] wife."

The prosecutor argued that the items purchased were unnecessary, and the guidelines only calculated property damage valued at up to $20,000. Further Flexfab, as a corporation, was not scored as a vulnerable victim despite the predatory conduct that occurred. Because of the volume of items purchased, the complaint did not delineate 2,800 separate embezzlement transactions, but an aggregate of the total taken. This aggregate was not considered in the sentencing guidelines. The prosecutor further asserted that the corporation was a victim but the employees and consumers were also victims. That is, Flexfab materials were used in various products and the cost of defendant's embezzlement would be passed down to purchasers. The trial court acknowledged the corporate position that defendant not be incarcerated was conditioned upon the availability of insurance, the embarrassment, and the remedy of internal controls.

In the PSIR, defendant reported to his wife that the products sent to the home from Amazon were given for free in exchange for testing and review. The trial court stated that the explanation was nonsensical because items such as a bidet would have no connection to Flexfab. And the trial court noted that defendant rationalized his conduct premised upon the belief that he was underpaid for the work he performed. Despite Flexfab's sentencing position, the prosecutor advocated for a sanction because "too much money" was at issue, and there needed to be a deterrent of incarceration.

Defense counsel countered that defendant was "extremely embarrassed" and ashamed of his actions. Upon first contact with the investigating police, defendant was honest and transparent. And he fully cooperated with the corporate inquiry.[4] Additionally, defendant had no prior criminal

---

[3] Although it was initially believed that the embezzlement began in 2016, a subsequent investigation revealed that it started in 2015.

[4] To the contrary, the PSIR reflects that another employee suspected defendant of embezzlement that occurred through the company's Amazon account. A formal investigation commenced and discovered that defendant submitted purchase invoices that were formatted in a manner to hide information. When other employees attempted to examine the Amazon account, it was learned that only defendant had authorization. When defendant was instructed to allow others to have access, he indicated that he was unable to make that change. Members of the company's information technology staff discovered that defendant accessed senior leadership e-mail accounts

history, was well-educated, and was always gainfully employed. Addressing deterrence, it was asserted that defendant would never be placed in a financial position again, and defendant lost the ability to be hired by anyone. In recognition of this, defendant began woodworking in his garage to earn an income. And while defendant's wife worked full-time, defendant homeschooled his children and was their primary teacher. Defense counsel asserted that defendant would not engage in this criminal behavior again, and he could be held accountable through a lengthy term of probation that would allow him to make restitution. Defendant also offered that his anxiety, depression, and life stressors caused his actions at Flexfab's expense. It was further represented that defendant attempted "to get through most of the belongings" and the court should order those items forfeited, donated, or auctioned. Because defendant was not a danger to the community, he requested a term of probation.

The trial court did not believe that defendant's wife was unaware of "what was happening here." Because of the volume of purchases, approximately 400 a year, it could not be justified by a "raise" at work. Additionally, in the months between the plea and sentencing, defendant did not present the items to be returned and did not inquire of the court on the logistics of the returns. The trial court referenced defendant's lack of remorse and his explanation of underpayment. Additionally, defendant essentially conceded to taking at least $350,000 of embezzled funds despite a corporate estimate of over $500,000. The guidelines did not account for the extent of this embezzlement nor did they address corporate victimization and the passage of costs onto consumers. In imposing sentence, it was noted that the guidelines failed to fully consider or address these facts. The trial court also referenced the guidelines "underscore" white-collar crimes, the amount of money embezzled, the fiduciary financial position occupied by defendant, the complexity of the theft, and the nearly six-year period in which the embezzlement occurred. The trial court concluded that a sentence above the guidelines was justified and proportionate to the crime. In the court's view, generally, an embezzlement of $50,000 warranted a year in jail and defendant far exceeded that amount. Ultimately, the trial court imposed restitution of $565,922 pending a hearing. The court then sentenced defendant to 120 to 240 months' imprisonment.

On June 22, 2023, defendant moved to withdraw his plea and for resentencing. However, when the hearing was held on August 8, 2023, defendant decided not to pursue his motion to withdraw the plea. Instead, he decided to proceed with his request for resentencing, and the prosecutor did not object to this request. And it was agreed that a restitution hearing would occur if the parties could not stipulate to the amount.[5] On the record, defense counsel engaged defendant

---

at 2:00 a.m. on May 24, 2022. Consequently, the company disabled defendant's access to the computer system. Later that day, defendant admitted to using corporate accounts for personal purchases and altered invoices to conceal the activity. This led to defendant's suspension and later the ultimate termination on May 27, 2022. In early June 2022, defendant was interviewed by the police and admitted that he ordered products and had them sent to his house, but he altered the invoices to reflect that they were sent to the company. Defendant advised the police that he did not keep track of the amount of his purchases.

[5] On November 29, 2023, the parties stipulated that the amount of restitution was $565,906. Of this amount, Flexfab was to receive $10,000 for their deductible, and The Hanover Insurance Company was to be paid the remainder.

to determine that his decision to withdraw the plea motion was freely and voluntarily given and that there was no sentencing agreement or representation made by the trial court. Defendant acknowledged that he was not promised the same or any other sentence. In fact, defendant was apprised that his sentence could be below, within, or above the guidelines. Thus, the trial court granted the request to withdraw the plea motion and the request for resentencing.

On December 6, 2023, the resentencing occurred. The parties stipulated to admit various exhibits. In the narrative portion of the prosecutor's sentencing memorandum, defendant's jail phone calls were summarized and quoted, and defense counsel did not object to this manner of their presentation.[6] Indeed, defendant did not object to the prosecutor's chosen manner of quoting content from the jail phone calls made by defendant without submission of the complete and original recordings. Regarding OV 19, the prosecutor asked to score 10 points because, during the phone calls, defendant supported, encouraged, and participated in the harassment of the corporate victim. The prosecutor stated that he was not seeking to hold defendant responsible for the acts by another. Rather, in the phone calls, defendant's own actual words indicated he encouraged the harassment.[7] To the contrary, defense counsel argued that the comments were not made during the investigation and defendant had already been sentenced. Additionally, the comments were made by defendant's wife. Defense counsel asked the trial court to hold a ruling in abeyance until defendant addressed the trial court. The trial court agreed, noting that this score did not change the guidelines.

In addressing the sentence, the prosecutor rejected the contention that defendant had taken responsibility for his actions. Flexfab, as defendant's employer, did not initially take a position regarding jail time. And the insurance company could have placed a lien on defendant's assets and forced a sale, but did not do so. These entities also did not oppose the agreement to resentence defendant. Nonetheless, the jail calls between defendant and his wife reflected that defendant encouraged and supported his wife's actions. When defendant's wife began to harass Flexfab and its employees, defendant laughed and wanted to ensure that the robocalls could not be traced back to him. And although defense counsel argued that defendant was merely capitulating to his wife because she controlled his access to their children, the prosecutor argued that it showed defendant's lack of character, lack of integrity, and lack of remorse. Defendant did not advise his wife to leave

---

[6] At the start of the resentencing hearing, the prosecutor admitted four exhibits reflecting the credit card and Amazon purchases, the forensic accounting, and Flexfab's description of what transpired, all without objection from defense counsel. The prosecutor then advised that he had recited and quoted from defendant's jail phone calls in his sentencing memorandum, and there would be no objection from defense counsel. Defense counsel confirmed there was no objection to the quoted material in the memorandum. Instead defense counsel would challenge the context of those statements through allocution and other exhibits.

[7] In the majority of the quotes submitted by the prosecutor, defendant's wife delineates her actions and defendant expresses praise and support for her with terms or phrases such as "Okay," "Very good," and "I love it." In one particular instance, defendant responded, "I'm proud of you, give them hell, f*** those bastards." When defendant's wife advises that she created robocalls that would be sent on an hourly basis, defendant never expresses concern or a potential adverse action to the robocalls despite the trial court's prior admonition.

alone innocent employees who did nothing wrong. Furthermore, Flexfab was a family-owned company, and the family was very active in the community. Because defendant engaged in retaliation, alleged that Flexfab committed insurance fraud, encouraged and participated in harassment, it now requested that the trial court impose the maximum sentence.[8] The prosecutor asserted that the guidelines did not adequately consider the amount of money embezzled, and the prosecutor was not required to charge defendant with 30 counts of embezzlement to have the full amount of embezzled funds considered at sentencing.

Defense counsel argued that the Legislature was aware that embezzlement over $100,000 was possible but did not account for it in the guidelines. The prosecutor's disagreement with this legislative choice did not warrant an upward departure. And the Legislature also failed to include corporations as vulnerable victims. Next, counsel argued that defendant was remorseful because he admitted to the allegations and assisted the investigation. When asked to explain defendant's pre-resentencing phone conversations with his wife that did not reflect remorse, defense counsel offered that defendant was shocked by the prior sentence imposed. Because the PSIR did not recommend substantial prison time, defendant was angry with his original counsel, the prosecutor, and the court. In response, the trial court noted that sentencing was individualized and deterrence was a proper consideration in sentencing. The court observed that the median income in Barry County was $45,000, opining that many people would accept $565,000, the amount defendant embezzled, if it only required to serve a year in jail. Additionally, the trial judge noted that he fell below the statewide average of imposing prison sentences.

The trial court questioned why defendant did not stop the harassment and failed to recognize that it could be detrimental to his sentencing. Defense counsel argued that defendant did not dictate what was said by others, and there was a difference between the speaker and the cheerleader. It was explained that defendant was trying to support his wife and children. Additionally, defendant's mother was "shot in front of him," and he did not address this trauma. Ultimately, defense counsel requested a sentence under the guideline range of 12 to 20 months'

---

[8] With the sentencing memorandum, the prosecutor submitted an online article by defendant's wife in which she had retracted Flexfab's name and replaced it with "Butt Hurt, INC." In this article, she accused Flexfab of destroying defendant's family, engaging in misconduct, violating labor laws, obtaining COVID-19 relief funds through political connections, engaging in discriminatory hiring practices, failing to follow workplace safety rules, and other violations. The prosecutor also submitted defendant's online profile claiming that companies and government can destroy a family and a page seeking donations for defendant's legal fight. Lastly, the prosecutor attached a letter from Flexfab's legal counsel. This letter reflected the company's prior position to not request incarceration for defendant out of concern for his family, particularly his children. However, since that time, defendant and those acting on his behalf had made defamatory comments about Flexfab on various social media platforms and a podcast. These comments also raised claims of fraud and workplace safety violations. It was noted that the public defamatory comments were contrary to defendant's admission of guilt through his no-contest plea. Further, defendant's actions as well as the acts of his supporters reflected a lack of remorse and a claim of innocence. In fact, there were allegations of entrapment by Flexfab. Consequently, Flexfab now requested that the trial court sentence defendant to the maximum penalty permitted by law.

imprisonment. But if the 10 points for OV 19 was included, the range was 15 to 25 months' imprisonment. Finally, counsel argued that defendant was employed in prison, had no major misconducts, was teaching others to read and write, and had developed a business plan. Defendant had disclosed the property items that he had at his home, but was not divested of it because "nobody wants it." And if the court allowed the sale of the items, an order would enter. The prosecutor interjected to support a sale of the embezzlement-funded property to prevent a continued benefit from ill-gotten gains and to provide restitution.

During his allocution, defendant acknowledged that he worked in information technology for Flexfab's family ownership and worked there for eight years. He was in a trusted position of security and purchase approval, and even went to the family's home to set up their home office. Defendant explained that he "wanted something," and it "snowballed" from his stress levels. Defendant acknowledged that his wife engaged in a pattern of harassment, including robocalls. He claimed to ask his wife to stop the behavior on one occasion. Nevertheless, because he had destroyed her life, defendant declined to tell her what to do. Defendant acknowledged that he laughed at the robocalls and inquired about the number of calls made. However, he denied that it was funny and claimed to play into his wife's conversation.

In response, the prosecutor argued that the phone calls between defendant and his wife supported a lack of remorse. Moreover, defendant told his wife that he was proud of her, cursed the individuals getting the phone calls, and advised that he "love[d]" what she was doing. This reflected a lack of remorse and supported OV 19 scored at 10 points. The trial court acknowledged that defendant could not control his wife's actions, but he could essentially take a stand and say the right thing. Particularly, when the Flexfab family ownership did not initially seek defendant's imprisonment, but merely restitution.

The trial court noted the advisory role of the guidelines and the key test of proportionality. The trial court scored 10 points for OV 19, concluding that defendant's comments to his wife, as set forth in and adopted from the prosecutor's memorandum, supported and encouraged the harm to the victim. The trial court also concluded that a corporation can be considered a victim even if not scored under OV 9 (addressing number of victims placed in physical danger or danger of property loss, MCL 777.39). And defendant's actions exploited the corporation, although not in accord with the language of OV 10 (addressing exploitation of vulnerable victim, MCL 777.40). That is, defendant made thousands of purchases over a nearly six-year period and abused the family trust and position of authority occupied in the company. This reflected a continuing pattern of criminal behavior inadequately considered in the guidelines. The trial court further found that the guidelines did not properly address that $565,000 was embezzled when the maximum considered was $100,000. The trial court was aware that the corporate representatives now sought reinstatement of the original sentence in light of the harassment by defendant and his wife. Nonetheless, the trial court imposed a sentence of 60 to 240 months imprisonment with 60 months serving as a sufficient deterrent. From this resentence, defendant appeals.

## II. OV 19

Defendant contends that the trial court erred in scoring 10 points for OV 19 because he did not encourage or support his wife's harassment of his former employer or former coworkers. We disagree.

Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (quotation marks and citation omitted). On the other hand, we review de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute[.]" *Hardy*, 494 Mich at 438; see also *Rhodes*, 305 Mich at 88. When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and preliminary examination testimony. *People v Teike*, 348 Mich App 520, 527; 19 NW3 733 (2023); *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). Additionally, the trial court may draw reasonable inferences arising from the record evidence. *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021).

In pertinent part, MCL 777.49 provides that a trial court may assess 10 points when "[t]he offender otherwise interfered with or attempted to interfere with, or that results in the interference with the administration of justice[.]" "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "The phrase 'interfered with or attempted to interfere with the administration of justice' is broad." *People v Steele*, 283 Mich App 472, 492; 769 NW2d 256 (2009). It is not limited to acts constituting an obstruction of justice. *Id*. This interference encompasses more than just the actual judicial process. *People v Barbee*, 470 Mich 283, 287-288; 681 NW2d 348 (2004). Law enforcement officers comprise an integral component in the administration of justice, and interfering with their duties, such as providing a false name, constitutes interference with the administration of justice for purposes of OV 19. *Id.* at 288. OV 19 also "may be scored for aggravating conduct that occurred after the sentencing offense was completed" because the circumstances described in OV 19 expressly encompass acts that occur after the sentencing offense was completed. *People v Smith*, 488 Mich 193, 201-202; 793 NW2d 666 (2010).

Interference with the administration of justice encompasses behavior designed to "hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *Hershey*, 303 Mich App at 343. It may include a defendant's admonition to his victims not to reveal his acts or he would go to jail. *Steele*, 283 Mich App at 492. The defendant's statements need not constitute a threat, but rather, satisfy OV 19, see also MCL 777.49, when the statements present "a clear and obvious attempt" "to diminish his victims' willingness and ability to obtain justice." *Id*. at 493. Moreover, actual interference is not required to assign a 10-point score. *People v Dingee*, ___ Mich App ___, ___; ___ NW3d ___ (2025), slip op at 10, lv pending. An attempt to interfere with the administration of justice will suffice. *Id*. Consequently, when a defendant engaged in an activity, such as social media posts, that were designed to intimidate the

-8-

victim and deter her pursuit of criminal charges, the trial court does not clearly err in finding a defendant's attempt to interfere with the administration of justice warranting a 10-point score. *Id*.

As noted, OV 19 "may be scored for aggravating conduct that occurred after the sentencing offense was completed" because the circumstances described in OV 19 expressly encompass acts that occur after the sentencing offense was completed. *Smith*, 488 Mich at 201-202. In this case, after the sentencing offense of embezzlement was completed and before resentencing, defendant's wife engaged in a series of actions designed to intimidate the family members and employees of Flexfab. She turned to social media, robocalls, and podcasts to convey that her family was victimized and further alleged that Flexfab engaged in criminal activity, violated federal law, and essentially engaged in a conspiracy with the prosecution and the court. In jail phone calls with defendant, she shared her plans and played the robocalls for him. Defendant generally responded affirmatively to his wife's actions. He also told his wife that he "liked" and "loved" her actions. Further, defendant encouraged his wife to continue her activities, stating, "I'm proud of you, give them hell, f*** those bastards." When defendant's wife advised that she created robocalls that would be sent on an hourly basis, defendant never expressed concern that the calls were directed to innocent employees or the potential adverse action of the robocalls on his resentencing in light of the trial court's admonition for defendant to keep his "nose clean."

The trial court found that defendant did not attempt to dissuade his wife from engaging in that behavior and its impact on his resentencing. Instead, he advised his wife that he "love[d]" it and cursed the corporate employees and members. When seeking resentencing, defendant claimed to capitulate to his wife because of the impact of his actions on their family. Moreover, his expression of concern for whether her acts could be traced to him was, in reality, simply concern for his wife.

The trial court acknowledged defendant's explanation but noted that defendant contradicted his expression of remorse in these conversations. Defendant learned that the robocalls were harassing his former coworkers. Yet, he did not seek to stop this conduct for the benefit of his former coworkers or for his own resentencing. The harassing conduct that defendant did not try to stop, but rather encouraged, caused the Flexfab corporation to be publicly maligned. It occurred to such an extent that the corporation previously, which did not seek defendant's incarceration, supported a lengthy term of imprisonment. In light of the extensive phone calls and the trial court's finding that defendant's role was one of encouragement and, in essence, delight, we cannot conclude that the trial court clearly erred in finding that the scoring of OV 19 at 10 points was supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438; *People v Rhodes (On Rem)*, 305 Mich App at 88.

## III. REASONABLENESS AND PROPORTIONALITY

Defendant next contends that his upward departure and the extent of the departure was unreasonable and disproportionate. We disagree.

When a sentence is challenged on appeal for reasonableness, appellate review is for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The sentencing guidelines must be consulted and taken into account when the trial court exercises its discretion when sentencing. *Id*. at 474-475. Ultimately, "the key test is whether the sentence is

proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range[.]" *Id*. at 475 (quoting *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990)). Michigan's principle of proportionality requires "sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense. However, these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *People v Boykin*, 510 Mich 171, 183-184; 987 NW2d 58 (2022).

Although the guidelines are now advisory, they remain a useful tool or guidepost to prevent disparity in sentencing. See *People v Dixon-Bey*, 321 Mich App 490, 524-525; 909 NW2d 458 (2017).

> Therefore, relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight. When making this determination and sentencing a defendant, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. [*Id*. at 525 (quotation marks and citations omitted).]

In this case, the trial court adequately explained why the minimum sentence of 60 months was more proportionate than a different sentence within the guidelines range. Specifically, the trial court noted that the guidelines "underscored" white-collar crime, that the guidelines did not consider a corporation to be a victim, and that the exploitation of the corporation and the effect on its costs to consumers were not factored into the guidelines. Additionally, the trial court noted that the duration of the embezzlement (nearly six years) and the amount taken (nearly $565,000) was not adequately considered. Moreover, the guidelines did not reflect that defendant occupied a position of trust in the organization and even went to the family home to set up an office there. Further, defendant engaged in a conflicting role regarding his remorse and redemption. Although the trial court instructed defendant to gather the property taken to meet the restitution obligation, neither he nor his counsel initially addressed the court regarding logistics of any forfeiture. Defendant may have entered a no-contest plea and cooperated with the police but he encouraged his wife to engage in a smear campaign against his former employer and raise allegations contrary to the plea admissions. Because of the net reward of material items that defendant acquired, the trial court rightly questioned whether defendant thought he could keep the items and enjoy a suspended jail sentence or avoid any period of incarceration. Ultimately after allocution, the trial court in resentencing defendant lowered the minimum term of 120 months to 60 months. The trial court explained that this period of time was necessary as a deterrent in a community where $45,000 was the average yearly income. Indeed, the trial court noted that many citizens would agree to serve one-year in jail in exchange for $565,000 in merchandise, including an above-ground pool, a bidet, and automatic blinds. Although Flexfab altered its position regarding defendant's incarceration and sought to obtain the maximum penalty allowed in light of the smear campaign conducted by defendant and his associates, the trial court explained its rationale for the lower

extent of the departure.   Under the circumstances, we cannot conclude that the trial court's resentence, albeit above the guidelines range, constituted an abuse of discretion.

Affirmed.


/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Anica Letica