# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

RICHARD LEE WOODIN,

       Defendant-Appellant.

UNPUBLISHED
September 18, 2018

No. 339751
Calhoun Circuit Court
LC No. 2015-003712-FH

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant was convicted in a jury trial of eluding a police officer, MCL 257.602a(3), and resisting and obstructing a police officer, MCL 750.81d(1). He was sentenced to 3 to 20 years' imprisonment for the eluding a police officer conviction and 2 to 15 years' imprisonment for the resisting and obstructing a police officer conviction. Defendant appeals as of right. We affirm.

## I. FACTS

Prior to August 29, 2015, Battle Creek police officer Sergeant Christopher Hug was aware that criminal activity frequently occurred at the Roadway Inn. On the morning of August 29, 2015, Sergeant Hug was on duty in his fully-marked patrol vehicle and uniform when he received a call to respond to an unrelated civil complaint at the Roadway Inn. As Sergeant Hug drove around the backside of the Roadway Inn, he noticed a black and maroon Ford Ranger parked on the side of the building. According to Sergeant Hug, he noted this vehicle because (1) days earlier he saw a completely maroon Ford Ranger in the Roadway Inn parking lot and (2) another Battle Creek officer informed him that "a maroon [Ford ranger], dark red, parked near the [Inn] . . . was possibly involved in criminal activity such as drug activity." The maroon Ford Ranger was now painted half black on the passenger side. Once Sergeant Hug finished responding to the civil complaint, the Roadway Inn manager stopped him to tell him that "a guy named Rich was involved in drug activity."

Around noon, Sergeant Hug, along with Officer Bennett, responded to another civil complaint at the Roadway Inn. After this civil complaint was resolved, as Sergeant Hug remained at the scene to take pictures of the Ford Ranger's passenger side, he noticed someone sitting inside the vehicle. According to Sergeant Hug, other Battle Creek police officers requested that he "try and find out the persons [sic] last name," so Sergeant Hug pulled his vehicle up close to the Ranger, exited his vehicle, and asked defendant, "hey, how ya doing?"

-1-

Sergeant Hug also asked defendant if he could talk to him for a minute but defendant did not respond. At this time, defendant turned on his vehicle and began rapidly pulling out of the parking lot, at which time Sergeant Hug twice yelled "stop police." When defendant continued to drive away, Sergeant Hug immediately entered his patrol vehicle and followed defendant as he continued to speed away from him. Sergeant Hug activated his emergency lights and air horn, and began providing information over the radio about his pursuit of defendant's vehicle. Officer Bennett heard Sergeant Hug over the radio, activated his emergency lights and sirens, and took over as second in pursuit.

Defendant continued at speeds reaching 70 to 80 miles per hour for several miles in a heavily populated area, with speed limits ranging from 25 to 45 miles per hour, as a heavy rain fell. Sergeant Hug and Officer Bennett pursued defendant on a section of residential roads that contained hills, residences, blind driveways, curves, and a school with a playground. At a high rate of speed and in wet conditions, defendant lost control of his vehicle twice but, after he regained control, continued to accelerate at high speeds. According to Sergeant Hug and Officer Bennett, all other cars on the road were pulling over as they approached them with their emergency lights and air horn activated.

Approximately five minutes later, defendant lost control of his Ford Ranger on a 90-degree turn and crashed into a wooded area. Defendant exited his vehicle and began running as Sergeant Hug pursued him on foot. Once Sergeant Hug caught up to defendant, he tackled him to the ground in the woods and placed him in handcuffs. Sergeant Hug provided defendant with his *Miranda*[1] warnings once they were near his patrol vehicle, and defendant acknowledged his Fifth Amendment rights by mumbling "yeah I understand." Defendant also acknowledged that he heard Sergeant Hug tell him to stop. When Sergeant Hug asked why he did not stop, defendant said he had warrants and that it was his daughter's birthday.

At trial, Sergeant Hug testified that he approached defendant "based on information that [he] was given and . . . [he] felt there was reasonable suspicion to make contact to try and determine (1) what his last name was, identify him and (2) whether there was other activity going on." When asked what other activity Sergeant Hug was referring to, he said "possible drug involved activity." For his part, defendant testified that he drove away from Sergeant Hug because he was "so pissed off that they were [going to] force me to talk to them that [he] just didn't want to." On cross-examination, defendant testified that he was "just using [his] rights not to talk to an officer." Defendant was convicted as noted above.

## II. ANALYSIS

### A. REBUTTAL EVIDENCE

Defendant first argues that the trial court abused its discretion by admitting Sergeant Hug's rebuttal testimony that defendant was a "known Meth cook" and other methamphetamine related evidence.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

"Admission of rebuttal evidence is within the sound discretion of the trial judge and will not be disturbed absent a clear abuse of discretion." *People v Figgures*, 451 Mich 390, 398; 547 NW2d 673 (1996). This standard "acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Thus, an abuse of discretion occurs when a trial court chooses an outcome that falls outside the range of principled outcomes. *Id*. If we determine that an evidentiary error occurred after an examination of the entire record, we will only reverse when it appears more probable than not that the trial court's error was outcome determinative. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

Defendant's argument that the trial court abused its discretion when admitting rebuttal evidence that was substantially more prejudicial than probative lacks merit. Generally, relevant evidence is admissible. MRE 402; *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009). However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, MRE 403, and the rules of evidence strictly limit the circumstances when character evidence may be admitted, *Roper*, 286 Mich App at 91.

In order for rebuttal evidence to be admissible, the evidence must relate to a substantive rather than a collateral matter that will "contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *Figgures*, 451 Mich at 399 (quotation marks and citations omitted). To determine if the trial court properly admitted rebuttal evidence, the test is "whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant" on direct examination, as opposed to whether evidence could have been offered in the prosecutor's case-in-chief. *Id*.

The admission of the prosecution's rebuttal evidence was probative because it was responding to defendant's testimony on direct examination. This Court has previously held that once a defendant presents testimony that he has a good character trait, a prosecutor may respond with contrary evidence on rebuttal. *People v Steele*, 283 Mich App 472, 486; 769 NW2d 256 (2009). On direct examination, defendant testified that he does not "go around and just disobey laws and run off." After defendant's testimony, the trial court allowed the prosecution to present Sergeant Hug as a rebuttal witness to testify to his belief that defendant was involved in criminal activity and his reason for not terminating the pursuit.

Sergeant Hug testified on rebuttal that defendant was a "known Meth cook" and that he continued to pursue defendant because he felt that "there was definitely a crime afoot . . . due to the flight of the vehicle and [defendant] leaving." When asked what crime he thought was afoot, Sergeant Hug replied that he "very much thought there may be Meth components, Methamphetamine components or possibly an actual active Meth lab which is a very dangerous thing." Although there was evidence already on the record that may have rebutted defendant's own testimony that he does not run away and disobey the law, this does not reduce the probative value of the rebuttal testimony. "As long as evidence is responsive to material presented by the defense, it is properly classified as rebuttal, even if it overlaps evidence admitted in the prosecutor's case[-]in[-]chief." *Figgures*, 451 Mich at 399. In any event, before Sergeant Hug's rebuttal testimony was admitted into evidence, the trial judge gave the following instruction to the jury:

[T]he people intend to call a rebuttal witness to memorialize conversation in chambers, at least one purpose for that rebuttal witness is to allow the officer to testify as to his belief that the Defendant was engaged in other criminal activity at the time of the pursuit. I'm [going to] tell you right now . . . the only reason that I'm allowing this is because of Defendant's statement when he testified that he's not in the habit or—not exactly sure now how it was worded, breaking the law; but so I will allow this for a limited purpose and I'm going to limit the testimony, and it's [going to] be pretty perfunctory, but we'll allow . . . the People to respond to that statement.

This cautionary jury instruction prevented any substantial and unfair prejudice from the admission of this rebuttal evidence. See *Figgures*, 451 Mich at 400.

In addition, the rebuttal evidence did not result in harmful collateral effects. Despite defendant's assertion that the rebuttal testimony was substantially and unfairly prejudicial because meth cooks are considered a "loathed class," a prosecutor is entitled to challenge a defendant's evidence of good character by presenting contrary evidence, either on cross-examination or through extrinsic evidence in rebuttal. *Steele*, 283 Mich App at 486. Here, the trial court allowed Sergeant Hug's rebuttal testimony as contrary evidence to explain his reason for not terminating his pursuit of defendant. Because defendant presented evidence about his good character, he "cannot be oblivious to the fact that the prosecutor might rebut it regardless of whether the evidence is highly inflammatory to his reputation." *Steele*, 283 Mich App at 487.

Finally, defendant argues that this Court previously held that the probative value of drug-related evidence unrelated to the crime at issue was substantially outweighed by the danger of unfair prejudice. *People v Spearman*, 195 Mich App 434, 446; 491 NW2d 606 (1992), overruled on other grounds by *People v Veling*, 443 Mich 23 (1993), rev'd in part 443 Mich 870 (1993). However, whether evidence is more prejudicial than probative is highly dependent on the facts, and *Spearman* is factually distinguishable from this case. See *People v Mardlin*, 487 Mich 609, 626; 790 NW2d 607 (2010). In *Spearman*, the defendant was convicted of second-degree murder, and this Court considered the trial court's admission of testimony that the crime was committed in "an abandoned house where crack cocaine had been used," and held that this evidence "did not tend to make the existence of any fact at issue more or less probable than it would have been without such evidence." *Spearman*, 195 Mich App at 445-446. The *Spearman* Court ruled that the evidence was more prejudicial than probative under MRE 403 because there "was absolutely no evidence that the crime was in any way drug-related." *Id*. at 445.

Unlike *Spearman*, there are several reasons why the disputed testimony in this case was not more prejudicial than probative. First, it was presented on rebuttal and in response to defendant's own testimony of good character on direct examination, as opposed to testimony that is offered as evidence during the prosecutor's case-in-chief to prove whether defendant was guilty of the charged crimes. Second, while resisting and obstructing arrest and eluding, like second-degree murder, and are not drug-related crimes on their face, evidence had already been admitted regarding defendant's potential involvement in drug-related crimes. In *Spearman*, there was no evidence on the record that the crime at issue was drug-related, other than the challenged testimony that the crime took place in a house known for crack-cocaine use, or that the defendant committed the crime because of some underlying involvement with drugs. *Spearman*, 195 Mich

-4-

App at 445. Third, the limited jury instruction in this case greatly reduced any prejudicial effect. Thus, under the facts, the rebuttal evidence was not more prejudicial than probative.

Even if we accepted defendant's argument that the rebuttal testimony was inadmissible because it was more prejudicial than probative, the trial court's error would have been harmless beyond a reasonable doubt and would not require reversal of defendant's convictions. *Spearman*, 195 Mich App at 445-446. Any error in the trial court's evidentiary ruling should be deemed harmless beyond a reasonable doubt in light of the unchallenged evidence on the record. Here, overwhelming testimony and video evidence of the pursuit supported defendant's convictions. Sergeant Hug testified that he was in uniform when he approached defendant's vehicle, and defendant fled the scene before Sergeant Hug was able to ask for defendant's name. The officer's in-car video also provided unrefuted evidence of both crimes, i.e., that Sergeant Hug told defendant to stop and defendant continued to flee. Thus, defendant's argument that the jury could not have convicted him for resisting and obstructing lacks merit because "the fact that contrary evidence is damaging to the defense does not equate with error." *Steele*, 283 Mich App at 486.

Therefore, the trial court did not abuse its discretion when admitting the rebuttal evidence. Even if the trial court abused its discretion, which it did not, any error was harmless.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that there was insufficient evidence to convict him of resisting and obstructing a police officer or to find beyond a reasonable doubt that he failed to comply with a lawful command or his arrest.[2] Thus, he argues, his conviction violates due process and must be vacated.

We review a challenge to the sufficiency of the evidence de novo to determine whether a rational trier of fact could find the essential elements of a crime were proven beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175-177; 804 NW2d 757 (2010). "In determining the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the prosecution." *Id*. at 175.

Defendant's sufficiency of the evidence argument lacks merit because the prosecution presented sufficient evidence for a rational jury to find beyond a reasonable doubt that defendant resisted and obstructed a police officer. An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of the felony of resisting and obstructing. MCL 750.81d(1). This statute defines "obstruct" as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

---

[2] Defendant does not argue that the prosecution failed to submit sufficient evidence to the jury to support his conviction for eluding a police officer, but only that insufficient evidence existed to prove defendant physically resisted or obstructed a police officer.

One may physically "obstruct" a police officer without actually hurting an officer or threatening the officer's safety. *People v Vasquez*, 465 Mich 83, 94; 631 NW2d 711 (2001). An individual may interfere with a police officer when he has the intent to interpose the officer from performing his or her duties. *Id*. Generally, intent can be difficult to prove and may be established by drawing reasonable inferences from circumstantial evidence. *People v Terry*, 217 Mich App 660, 663; 553 NW2d 23 (1996). Thus, "[a]n actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Fetterley*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998) (citation omitted).

Defendant testified that he knew Sergeant Hug was in full uniform when Sergeant Hug asked to talk with him at the Roadway Inn. When defendant was asked whether he thought it was appropriate to drive 80 miles per hour in a residential neighborhood with pedestrians present, defendant testified that he had it in his mind that he did not want to speak with the officers. Defendant also testified that he saw "nothing but cherries" in his rearview mirror and the police officers were "coming on to him fast." Additionally, there was video evidence in the record that Sergeant Hug said, "I told you to stop" and defendant responded "yeah, I know." However, defendant testified that he thought Sergeant Hug was telling him to stop after he tackled him to the ground.

While Sergeant Hug could not recall if he yelled at defendant to stop before he tackled him, Officer Bennett testified that he did. Officer Bennett testified that he saw defendant running and, as he made his way down to the driveway next to the woods, his microphone picked up Sergeant Hug's and the trooper's voice yelling at defendant to stop running. Once Sergeant Hug caught up to defendant, he tackled defendant to the ground and, at that time, he felt defendant was in control physically, so he placed him in handcuffs. Even though defendant, Sergeant Hug, and Officer Bennett had conflicting testimony, it was for the jury to determine the witnesses' credibility and what weight to give the evidence, and we should not interfere with these determinations. *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003). And this conflicting testimony does not undermine the jury's verdict in finding guilt beyond a reasonable doubt, regardless of whether Sergeant Hug actually commanded defendant to stop, because any conflicts in the evidence are resolved in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Therefore, the prosecution presented sufficient evidence to convict defendant of resisting and obstructing a police officer.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica