*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 4, 2022

Plaintiff-Appellee,

v

No. 354180
Isabella Circuit Court

NOAH DUANE YATS,

LC No. 2019-000950-FH

Defendant-Appellant.

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

A jury convicted defendant, Noah Duane Yats, of two counts of third-degree criminal sexual conduct (CSC-III) (sexual penetration of a person at least 13 but under 16 years of age), MCL 750.520d(1)(a), and one count of fourth-degree criminal sexual conduct (CSC-IV) (sexual contact with a person at least 13 but less than 16 years of age and actor at least five years older), MCL 750.520e(1)(a). The trial court sentenced defendant to serve concurrent prison terms of 96 to 180 months for the CSC-III convictions and 110 days in jail, time served, for the CSC-IV conviction. Defendant appeals as of right. We affirm.

## I. FACTS

In the summer of 2016, complainant, then 13 years old, spent every other week with her mother as part of the visitation schedule between her father and mother. During that time, complainant's mother resided with defendant,[1] her boyfriend, in his home. According to complainant's testimony, defendant began acting inappropriately with her on weekend visits with her mother that occurred before the summer of 2016. Specifically, complainant testified that defendant grabbed her buttocks while in the kitchen or when her mother and siblings were not around. Complainant testified that defendant's conduct continued into the summer of 2016 when defendant sexually penetrated her vagina with his penis about ten times and digitally penetrated

---

[1] Defendant was 32 years old throughout the course of complainant's visitation with her mother in the summer of 2016.

her twice with his fingers. In addition, complainant testified that as defendant sexually penetrated her with his penis he told her "not to tell anyone . . . [b]ecause he would deny it all."

Complainant disclosed these allegations to her counselor in 2018; complainant's counselor reported complainant's disclosure to Child Protective Services. Complainant then sat for a forensic interview on March 5, 2018, at the Clare County Child Advocacy Center. Trooper Jeffrey Huovinen of the Michigan State Police conducted the investigation of complainant's allegations, which included an interview with defendant on August 7, 2018.[2]

Defendant was charged with two counts of CSC-III, one count of accosting a child for immoral purposes,[3] and one count of CSC-IV. A jury found defendant guilty of the two counts of CSC-III and one count of CSC-IV, and not guilty of accosting a child for immoral purposes. Defendant now appeals to this Court.

## II. ANALYSIS

## A. IMPROPER VOUCHING

Defendant argues that the trial court committed plain error when it allowed the prosecutor's expert to testify that false reports of sexual assaults are "very rare" because it improperly vouched for complainant's credibility and invaded the province of the jury. We disagree.

At trial, defendant did not object to the prosecution expert's statement now challenged on appeal. As a result, this issue is unpreserved. This Court reviews unpreserved arguments for plain error affecting substantial rights. *People v Seals*, 285 Mich App 1, 4; 776 NW2d 314 (2009). A defendant in a criminal case must show that error occurred, "the error was plain, i.e., clear or obvious," and that the plain error affected his or her substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

Generally, a witness may not "comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Similarly, expert testimony "may not vouch for the veracity of a victim," *id*., but is admissible in accordance with the following:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if

---

[2] During this interview, defendant denied sexually assaulting complainant. Defendant also denied sexually assaulting complainant in a 2016 interview with Trooper Huovinen. Criminal charges were not filed against defendant in 2016.

[3] MCL 750.145a.

> (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [MRE 702.]

In child sexual abuse cases, "[a]n expert may testify regarding typical symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim *or* to rebut an attack on the victim's credibility." *People v Peterson,* 450 Mich 349, 373; 537 NW2d 857 (1995). However, an expert "may not testify "that children overwhelmingly do not lie when reporting sexual abuse because such testimony improperly vouches for the complainant's veracity." *People v Thorpe*, 504 Mich 230, 235; 934 NW2d 693 (2019).

In this case, Holly Rosen, the prosecution's expert witness,[4] testified that "[f]alse reports are very rare[]" in the below exchange with defendant's trial attorney on cross-examination:

> *Mr. Slep* [defense counsel]: Have you ever dealt with children professionally that had made accusations that it was later found that it was motivated by attention seeking behavior?
>
> *Ms. Rosen*: No. I've encountered recanting a lot, a majority of times. Where kids say something and later they say it doesn't. And that's usually because they're afraid of consequences of what will happen if the disclosures come out.
>
> *Mr. Slep* [defense counsel]: And again you say usually, I mean you don't know in this case right?
>
> *Ms. Rosen*: I don't know in any case. I'm just telling the likelihoods. *False reports are very rare*. (Emphasis added.)

Relying on *Peterson*, *Thorpe*, and two unpublished opinions[5] by this Court, defendant argues that Rosen's statement regarding the rarity of false reports was plain error.

In *Peterson*, our Supreme Court held that two prosecution experts improperly vouched for the veracity of the minor victim during the defendant's jury trial. *Peterson*, 450 Mich at 375-376. The Court reasoned that the trial court erred when it allowed one prosecution expert "to testify that children lie about sexual abuse at a rate of about two percent" and another "to testify, over defense objection, that of the cases and studies he was familiar with, there is about an eighty-five percent

---

[4] Rosen was qualified as an expert in the area of explaining perpetrator tactics and victim responses in child sexual abuse cases. Defendant's trial attorney did not object to Rosen's qualification.

[5] Defendant cites *People v Yensen*, unpublished per curiam opinion of the Court of Appeals, issued March 25, 2021 (Docket No. 350176), and *People v Brooks*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2021 (Docket No. 349955). MCR 7.215(C)(1) states, in part, that "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis. Unpublished opinions should not be cited for propositions of law for which there is published authority."

rate of veracity among child abuse victims." *Id*. at 376. The Court further reasoned that a jury in a case involving a credibility contest seeks "to hang its hat" on witness testimony it views as impartial. *Id*. Accordingly, an expert's reference to truthfulness in such a case exceeds what is allowable under MRE 702. *Id*.

Nonetheless, the Supreme Court declined to reverse the jury verdict in *Peterson* because the errors caused by the expert witness testimony did not favor the defendant or the prosecution. *Id*. at 378-379. Because of this, the Court concluded that the error did not affect the jury's decision to convict the defendant. *Id*. at 379. Additionally, the Court noted that *Peterson* was not a credibility contest because of "the overwhelming evidence against the defendant." *Id*. at 380-381.

In *Thorpe*, "a true credibility contest," our Supreme Court reversed the judgment of this Court and remanded to the trial court for a new trial. *Thorpe*, 504 Mich at 265-266. The Supreme Court found that the prosecution's expert witness vouched for the victim's credibility by opining on redirect examination "that only 2% to 4% of children lie about sexual abuse" and identifying two examples of when children might lie, neither of which applied in *Thorpe*. *Id*. at 259. Based on this, the Court reasoned that a reasonable observer might conclude that the prosecution expert vouched for the victim's credibility and likely affected the jury's ultimate verdict. *Id*. at 259-260.

Here, defendant misrepresents Rosen's statement regarding the rarity of false reports. The trial court record shows that Rosen was not responding on cross-examination to a general question about disclosure of sexual assaults. Rather, Rosen continued to answer a question about accusations by children that may be potentially motivated by attention seeking behavior, elaborating further about her experience with disclosures and recanting. Additionally, Rosen offered no opinion about complainant's truthfulness. Unlike *Peterson*, Rosen testified that she never met complainant or knew who complainant was. Rosen testified that she never met with complainant's father or stepmother, but possessed a general understanding of the facts in this case. Rosen's statement that false reports are very rare was isolated, unlike the statistical reference used by the prosecution expert in *Thorpe* in addition to the two specific scenarios of when children might lie about sexual abuse.

Moreover, even if Rosen's statement amounted to an obvious error by the trial court, this Court cannot ignore who elicited the testimony from Rosen. The trial court record shows that defendant's trial attorney initiated the discussion with Rosen about false disclosures and lying. In fact, defendant's trial attorney asked the following questions of Rosen on cross-examination prior to her statement now challenged on appeal:

> *Mr. Slep* [defense counsel]: Okay. In your research have you gone over or discovered anything regarding children actually lying about things like this?
>
> *Ms. Rosen*: I've done -- I've heard a lot of data about people in general lying, but not children specifically.
>
> *Mr. Slep* [defense counsel]: Okay. Is it a possibility in your head that children could lie about things like this?
>
> *Ms. Rosen*: Anything is possible.

* * *

*Mr. Slep* [defense counsel]: Have you ever been exposed to research about why alleged victims may something that did not occur?

*Ms. Rosen*: Yes, I have.

*Mr. Slep* [defense counsel]: And what does your research say about that?

* * *

*Mr. Slep* [defense counsel]: Have you studied any studies that mentioned children being influenced by parents to lie?

* * *

*Mr. Slep* [defense counsel]: Do you believe every child that you've cared for [in] your professional capacity?

*Ms. Rosen*: I don't believe anybody about anything until I get to know them and ask certain questions.

*Mr. Slep* [defense counsel]: Even though you can generally say that what you've been saying here on the prosecution side, but that's just a general statement. So you're saying like specifically you have to see somebody, interview them, you just don't believe anybody on your generalities, correct?

*Ms. Rosen*: Correct, you have to look for certain factors.

* * *

*Mr. Slep* [defense counsel]: Have you ever dealt with children professionally that had made accusations that it was later found that it was motivated by attention seeking behavior?

As this excerpt shows, defendant's trial attorney asked Rosen three questions about children lying prior to Rosen's statement about the rarity of false reports. Similarly, defendant's trial attorney asked about false disclosures and Rosen's belief in disclosures by children. The prosecution did not conduct a redirect examination of Rosen or ask questions on direct examination similar to those defendant's trial attorney raised on cross-examination. Defendant's trial attorney invited the testimony to which defendant now objects.

"Under the doctrine of invited error, a party waives the right to seek appellate review when the party's own conduct directly causes the error." *People v McPherson*, 263 Mich App 124, 139; 687 NW2d 370 (2004). Despite defendant's argument, the reasoning in *Thorpe* is distinguishable from the facts of this case. In *Thorpe*, it was the prosecutor who asked the question that led to the evidentiary error by the trial court. Our Supreme Court reasoned:

"Opening the door is one thing. But what comes through the door is another." "[T]he test of whether rebuttal evidence was properly admitted is . . . whether the evidence is properly responsive to evidence introduced or a theory developed by the defendant." Defense counsel did not open the door to [the expert's] testimony regarding the rate of false reports in child sexual abuse cases simply by asking him on cross-examination whether children lie or manipulate. Counsel did not ask [the expert] about the frequency with which children lie, whether children make false allegations of sexual abuse, or whether he has had any experience with false accusations in his own practice. We agree with [the defendant] that defense counsel's questions to [the expert]—"let me ask you this, kids can lie, true?" and "[a]nd they can manipulate[?]"—were discrete, straightforward, and uncontroversial questions of fact. To maintain that these basic questions *invited* the prosecution to elicit expert testimony from [the expert] that children lie about sexual abuse 2% to 4% of the time would essentially require defense counsel to read tea leaves before asking any questions. [*Thorpe*, 504 Mich at 253-254 (citations omitted).]

In contrast, defendant's trial attorney questioned Rosen about research regarding children lying, the possibility that children might lie, what research says about children lying, and her belief in every child's accusations. Such questions do not comport with what our Supreme Court identified in *Thorpe* as "discrete, straightforward, and uncontroversial questions of fact." *Id*. at 254. On cross-examination, defendant's trial attorney set up the sequence of questions that led Rosen to testify that false reports are rare. Unlike in *Thorpe*, Rosen's statement was not so unpredictable or unresponsive that defendant could not have anticipated what might come through the door defense counsel had opened. Furthermore, Rosen's testimony that lying in child sex abuse cases is "very rare" lacks the statistical precision that troubled the Supreme Court in *Thorpe*. Therefore, reversal is not warranted on this basis.[6]

## B. SELF-HARM EVIDENCE

Defendant contends the trial court abused its discretion when it allowed, over his objections, complainant to testify about an alleged incident when he intentionally cut himself with a knife. Specifically, defendant contends that complainant's testimony was irrelevant and, thus, inadmissible under MRE 401. Notwithstanding relevance, defendant also contends that pursuant to MRE 403 complainant's testimony was significantly more prejudicial than probative. We agree with defendant that complainant's testimony was not relevant, but disagree that the testimony was outcome determinative.

---

[6] We reject defendant's alternative claim that his trial attorney was ineffective for not objecting to or preventing the admission of Rosen's statement. Limiting our review to mistakes apparent from the record, defendant has not met his burden and overcome the presumption that his trial attorney failed to object as a matter of trial strategy. *People v McPherson*, 263 Mich App 124, 138-139, 139 n 12; 687 NW2d 370 (2004); *People v Avant*, 235 Mich App 499, 507-508; 597 NW2d 864 (1999).

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant objected to the prosecution's question to complainant whether defendant cut himself on the ground of relevancy. Defendant also objected under MRE 403 to the prosecution's question to complainant as to why defendant cut himself. The trial court overruled defendant's objections. Accordingly, this issue is preserved.

Whether evidence was properly admitted is reviewed for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Relevant evidence is admissible; irrelevant evidence is not." *People v Dixon-Bey*, 321 Mich App 490, 512; 909 NW2d 458 (2017), citing MRE 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. Put another away, MRE 403 "prohibits evidence that is *unfairly* prejudicial." *Dixon-Bey*, 321 Mich App at 513. "[E]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *Id*.

In the following exchange in this case, the prosecution questioned complainant on redirect examination about what she wrote in a notebook found by her stepmother and admitted as exhibit seven during defendant's trial:

*Q*. What did you write regarding that middle excerpt?

\* \* \*

*A*. Okay. Remember that I love you and what you did with me -- that you get -- you got to promise me that you will not cut yourself anymore please because you're my best friend and I really need you.

*Q*. Okay. What -- what did you make reference to -- who are you making reference about cutting themselves that exhibit?

*A*. [Defendant].

*Q*. And did [defendant] cut himself?

*A*. Yes.

The prosecution shortly thereafter asked complainant why defendant was cutting himself and elicited details from complainant, including a description of the knife, where defendant was cutting himself on his body, the amount of blood, and defendant's demeanor during the incident. Defendant challenges the relevance of such testimony, but cites no legal authority in support of his

position. See *Mitcham v City of Detroit*, 335 Mich 182, 203; 94 NW2d 388 (1959) (stating that an appellate court will not conduct legal research in order to sustain or reject a party's position).

However, complainant's testimony about defendant's cutting incident was not relevant. The testimony does not make it more or less likely that defendant committed criminal sexual conduct or accosted complainant for immoral purposes. Moreover, complainant's recording of the cutting incident in a notebook provides little to no support for her capacity to tell the truth nor does it offer any relevant evidence as to whether defendant sexually assaulted her.

But we also conclude that the admission of complainant's testimony about the cutting incident is not error sufficient to reverse defendant's convictions. An evidentiary error does not merit reversal in a criminal case unless it appears that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). MCL 769.26 states:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

Defendant's act of self-harm was unrelated to whether he was guilty of the crimes alleged against him. Also, the jury could have learned of defendant's cutting incident independent of complainant's testimony upon the review of complainant's notebooks admitted during trial. As a result, complainant's testimony was not sufficiently prejudicial that it determined the outcome of defendant's jury trial.

Defendant further argues that the admission of complainant's testimony was more prejudicial than probative. Defendant again cites no legal authority; instead, defendant appeals to public policy, addresses negative connotations regarding mental health, and assumes the jury viewed him as having a disturbed mind as a result of the cutting incident. In the absence of a substantive analysis, however, we cannot grant defendant relief and reverse his convictions on the basis of broad and generalized arguments lacking citation to legal authority.

## C. OFFENSE VARIABLE (OV) 10

Defendant argues that the trial court erred in assessing 15 points for OV 10 because the record does not support a finding of predatory conduct. We disagree.

"Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). "A trial court's findings of fact are clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake." *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020). In addition, this Court reviews "de novo whether the facts as found were adequate to satisfy the statutory scoring conditions." *Id.*

MCL 777.40 outlines the scoring of OV 10, which addresses the exploitation of a vulnerable victim. A trial court assigns 15 points to OV 10 when predatory conduct was involved. MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). OV 10 is properly scored at 15 points when a trial court answers affirmatively the following questions:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008).]

"Predatory conduct" is conduct "commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011), quoting *Cannon*, 481 Mich at 162. This includes conduct that "created or enhanced" a victim's vulnerability by gaining a victim's trust, and exploiting that trust to create an opportunity for sexual aggression. *People v Barnes*, 332 Mich App 494, 503-504; 957 NW2d 62 (2020). Additionally, grooming, by way of gradually escalating "less intrusive and less highly sexualized forms of sexual touching" in order to "desensitiz[e] the victim to future sexual contact," demonstrates an intent to victimize a person. *People v Steele*, 283 Mich App 472, 491-492; 769 NW2d 256 (2009).

> Here, the trial court provided the following explanation for scoring OV 10 at 15 points:
>
> All right. Well I've reviewed the arguments set forth in the brief by the Prosecution and I've considered the case law that has been cited. In light of -- in light of not only the *relationship* that exists but also the -- I'll say for lack of better words the *grooming* that the Defendant did in this case would justify a scoring of an additional five points for OV 10. So, I will score it at 15 total. [Emphasis added.]

Complainant testified that defendant engaged in activities alone with her, such as fishing, that led to sexual activity. Also, complainant testified that the sexual abuse began when defendant touched her buttocks in the kitchen when others were not present. Complainant stated that she slept in the same bedroom as her mother and defendant because of the lack of beds in defendant's home. When complainant's mother left the bedroom, defendant inappropriately touched her in bed, which included acts of penetration. In addition, complainant testified that defendant told her that they would be together after she turned 18 and that complainant should not tell anyone about his sexual activity with her because no one would believe her.

Based on this evidence, defendant used his position of trust to arrange to be alone with complainant and engage in behavior with her that progressed to sexual assault. Preoffense conduct of waiting for an opportunity to be alone with a victim in an isolated location is sufficient to constitute predatory conduct. *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434

(2003). Defendant conducted his relationship with complainant in a manner that secured secluded access to her for the purpose of sexually assaulting her, and relied on this relationship to conceal these activities. Thus, defendant's preoffense conduct with complainant extended beyond opportunistic behavior and ordinary planning; defendant's preoffense conduct was active manipulation of complainant's relationship with him in order to isolate and sexually assault her. We find no error in the trial court's scoring of OV 10.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola