*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARCUS CHARLES WRIGHT,

        Defendant-Appellant.

UNPUBLISHED
March 9, 2023

No. 359964
Ingham Circuit Court
LC No. 20-000023-FH

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

After a bench trial, the trial court found defendant, Marcus Charles Wright, guilty of accosting a child for immoral purposes, MCL 750.145a. The trial court subsequently sentenced defendant to serve 20 to 48 months in prison, with credit for 110 days served.[1] Defendant appeals by right. We affirm defendant's conviction and sentence but remand to the trial court for the ministerial task of correcting his judgment of sentence.

## I. BACKGROUND

The parties do not dispute the facts in this case, but they are in dispute as to whether the facts meet the elements of the charged offense. At the time of the offense, the victim was a 12-year-old girl, and defendant was 34 years old. Defendant was a friend of the family and had routinely spent time with the victim, her siblings, her mother, and her stepfather. The victim developed a crush on defendant. The crux of this case is a secret romantic relationship that defendant carried on with the victim for several months in 2019. The victim's parents learned about this secret relationship in August 2019. The evidence at trial showed that the secret relationship primarily was conducted by text messaging. Defendant put his phone number into the victim's phone, and the two began exchanging messages. At first, the messages were benign, but eventually the messages became far more intimate and personal. As described by the victim, the

---

[1] As will be discussed, defendant's judgment of sentence incorrectly states that defendant was sentenced to serve 21 to 48 months.

messaging became "like a romantic relationship." In these messages, defendant used pet names such as "babe" and "boo" when referring to the victim. Defendant and the victim discussed and acted as if they were a romantic couple, and the victim testified that she believed that they were a couple and that defendant had feelings for her. Messages exchanged between defendant and the victim's mother show defendant instigated this secret relationship sometime after learning of the victim's crush on him.

The victim and other witnesses testified that this secret relationship began during a period of time in which the victim was depressed and unhappy. The victim had felt that defendant was the only person she could confide in during this time. The victim and defendant both testified that there was no sexual conduct or kissing between the two, and the victim further testified that defendant never pressured her to engage in any sexual conduct. However, the messages did contain discussions of sexual activity. Defendant and the victim discussed wanting to engage in sexual activities but that they needed to wait until the victim turned 18. However, defendant responded to a message in which the victim stated that she and defendant would "get together either way" by stating, "[w]e will, and you let me know when you're ready for more. I don't want to pressure you, k." Defendant conceded that he intentionally encouraged the victim's crush and the romantic relationship, however he claimed that he did so to help cheer the victim up during her difficult time and to boost her confidence.

This secret relationship was discovered by the victim's older sister, who found the messages on the victim's phone. The victim's mother contacted police, and an investigation began. Defendant and the victim were both interviewed. Despite the discovery and investigation, defendant carried on the secret relationship by using different phones, encouraging the victim to delete their messages, and instructing the victim to "be discreet." Defendant even discussed plans to meet with the victim secretly at a park. Defendant was eventually charged with accosting a minor, and he waived his right to a jury trial. The trial court heard testimony from the victim, defendant, and other witnesses. Moreover, an extensive number of text messages were admitted into evidence and read into the record. The trial court found that the prosecution had proven the charge beyond reasonable doubt.

At sentencing, the trial court assessed 15 points for offense variable (OV) 10 and 10 points for OV 19 over defendant's objections. Defendant's recommended guidelines minimum sentence range was 10 to 23 months, and the trial court orally sentenced defendant "for a minimum term of 20 months, and a maximum of 48." However, when the judgment of sentence was entered, it listed a minimum of 21 months and a maximum of 48 months. On appeal, defendant challenges the sufficiency of the evidence for his conviction, the scoring of OVs 10 and 19, the effectiveness of his trial counsel, and the accuracy of his judgment of sentence. We affirm on all issues defendant raises, but remand for the sole purpose of correcting the judgment of sentence.

II. ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

1. STANDARD OF REVIEW

A claim of insufficient evidence is reviewed de novo. *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). The claim invokes a defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). All "factual conflicts are to be viewed in a light favorable to the prosecution." *Wolfe*, 440 Mich at 515. We must "view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. Evidence may be circumstantial or drawn from reasonable inferences. *Solmonson*, 261 Mich App at 661. However, inferences may not be based only upon speculation. *People v Lane*, 308 Mich App 38, 59; 862 NW2d 446 (2014). Furthermore, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

## 2. DISCUSSION

Defendant argues that there was insufficient evidence to support his conviction. We disagree.

Accosting a minor is governed by MCL 750.145a:

> A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, *or* who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both. [Emphasis added.]

The prosecution may prove the offense of accosting a minor via two different theories of guilt:

> [T]he defendant (1) accosted, enticed, or solicited (2) a child (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act. Alternatively, a defendant is guilty of accosting a minor if the prosecution proves beyond a reasonable doubt that the defendant (1) encouraged (2) a child (or an individual whom the defendant believed to be a child) (3) to commit (4) a proscribed act. [*People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011).]

As described by our Supreme Court, the former theory of guilt "pertains to certain acts and requires a specific intent" while the latter theory requires only that the defendant encourage the victim with "general criminal intent." *Id*. at 499-500. In other words, for the second theory, "the act of encouragement is the evil in itself, and an accused, by completing the act, is 'presumed to intend the natural consequences of his [actions] . . . .' " *Id*. at 500 (citation omitted; alterations in

-3-

original). The word "encouraged" is defined to mean "to inspire with courage, spirit, or confidence[,] . . . to stimulate by guidance, approval, . . . to promote; foster." *Id*. (quotation marks and citation omitted; alterations in original).

This contrasts with the first theory, which "requires the prosecution to demonstrate a specific intent to induce or force the child to commit proscribed acts; it is not enough for the prosecution to merely establish that the defendant committed acts of accosting, enticing, or soliciting." *Id*. Accordingly, our Supreme Court stated that, by enumerating these two differing theories of guilt, our Legislature "demonstrated an intention to criminalize a wide range of sexually predatory actions aimed at children." *Id*. at 500-501.

In the present case, there was ample evidence for the trier of fact to find that defendant intended to induce the victim to engage in sexual or immoral conduct or that defendant encouraged the victim to engage in sexual or immoral conduct. Defendant knew about the victim's crush on him, and he conceded that he actively encouraged the victim's feelings for him. The victim agreed that defendant treated her as an adult, which she liked; that she and defendant discussed being a couple; and that she trusted defendant and confided in him during a time of vulnerability. The victim further agreed that defendant told her that they needed to wait to engage in sexual activities. However, the victim sometimes felt that she wanted to ignore the law and to do these activities with defendant anyway. In fact, the victim agreed that if there had been no law against it, she would have been willing to have sex with defendant.

Additionally, there were numerous text messages between defendant and the victim demonstrating that defendant fostered a romantic relationship with the victim. In some of these messages, defendant told the victim that she smelled and tasted good. In other messages, the two discussed engaging in sexual conduct in the future. For example, defendant told the victim that he wanted to give her a "present," and the victim testified that she understood this to mean having sex. More so, the defendant continued to message the victim even after the investigation into his activities began. The messages demonstrated that defendant desired to engage in sexual activity with the victim and was slowly moving her toward being comfortable with this. There even was photographic evidence of defendant and the victim sleeping on a couch with defendant's head on the victim's breasts. The lead detective on this case, Detective Jason Pung, testified that, in his professional opinion, defendant's conduct amounted to grooming of the victim.

Thus, there is ample evidence for the trial court to find that defendant was grooming the victim, i.e., gaining her trust and affection, and actively inducing or encouraging her to eventually engage in an immoral or sexual act with him. See *Kowalski*, 489 Mich at 499-500; MCL 750.145a. The victim was in a vulnerable and depressed state, and defendant used the victim's trust to manipulate and encourage her into a false relationship. This required only the general intent to encourage the victim, *Kowalski*, 489 Mich at 499, which the evidence, taken in the light most favorable to the prosecution, supports. Defendant goes to great lengths to argue that he never intended to engage in any sexual conduct with the victim. However, his testimony was a matter of credibility for the trier of fact to decide, and this Court will not disturb such a finding. *Kanaan*, 278 Mich App at 619.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

## 1. STANDARD OF REVIEW

Because defendant failed to move the trial court for a new trial or evidentiary hearing, we review his ineffective assistance claim for errors apparent from the record. See *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *Id*. at 186 (quotation marks and citation omitted).

## 2. DISCUSSION

Defendant argues that his trial counsel was ineffective for failing to move for a directed verdict. We disagree.

There is a strong presumption that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks omitted), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and a defendant has a "heavy burden" to show otherwise, *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (quotation marks and citations omitted). For an ineffective assistance of counsel claim to be successful, a defendant must show: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 688, 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *Lockett*, 295 Mich App at 187. Furthermore, examination of counsel's actions must be "highly deferential" and without the benefit of hindsight, *Strickland*, 466 US at 689, and there is a "strong presumption" that counsel's actions arose from "sound trial strategy," *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). We must not "substitute our judgment for that of counsel on matters of trial strategy . . . ." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

As previously discussed, there was sufficient evidence to prove each element of the offense, and our Supreme Court has held that trial counsel is not ineffective for failing to move for a directed verdict under such circumstances. See *People v Riley*, 468 Mich 135, 141-142; 659 NW2d 611 (2003). Trial counsel has no duty to make a meritless or futile objection, see *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015), and, given that the evidence amply supported each element of the offense, defendant has failed to overcome the high burden of showing that his counsel was ineffective for failing to move for a directed verdict. Moreover, in light of the overwhelming evidence, defendant has failed to show a reasonable probability that the outcome would have been different.

We further see no merit to defendant's contention that he is entitled to relief for his trial counsel's failure to object to certain findings made by the trial court. Defendant in his Standard 4 brief challenges the trial court's statement, "And also it's important to the Court that Defendant told Detective Pung that he, quote, entertained the idea of sex." It does appear that the trial court misquoted the detective's testimony. According to Detective Pung, defendant had stated that "he

was entertaining the thought of" wanting "a relationship after [the victim] turned 18." Although Detective Pung inferred that this meant having sex after the victim turned 18, there was no testimony in which defendant explicitly told Detective Pung that he entertained the idea of sex or wanted to have sex with the victim. However, defendant's intention could be inferred from the numerous text messages and trial testimony, including a text message in which defendant told the victim to tell him when she was ready to engage in sexual activity. Therefore, any misstatement by the trial court was harmless. See MCL 769.26. Defendant is not entitled to relief.

## C. SENTENCING

### 1. STANDARD OF REVIEW

A trial court's factual findings with respect to scoring of the sentencing guidelines are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* However, given that defendant failed to raise any challenge to the accuracy of the judgment of sentence, we review this portion of defendant's argument for plain error. *People v Meshell*, 265 Mich App 616, 638; 696 NW2d 754 (2005). The defendant must show that an error occurred, that the error was plain, and that the error affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

### 2. DISCUSSION

Defendant argues that the trial court improperly assessed 15 points for OV 10 and 10 points for OV 19. We disagree. However, we agree that his judgment of sentence appears to be inaccurate and that remand to the trial court is required for the judgment of sentence to be corrected.

"Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). A defendant is entitled to resentencing when a trial court commits an error in scoring the sentencing guidelines and when this error "altered the appropriate guidelines range." *People v Francisco*, 474 Mich 82, 88-91; 711 NW2d 44 (2006). OV 10 relates to the "exploitation of a vulnerable victim." MCL 777.40(1). OV 10 requires that 15 points be assessed if "[p]redatory conduct was involved." MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). We previously set forth a three-part test to determine whether there was predatory conduct for purposes of OV 10:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

-6-

(3) Was the victimization the offender's primary purpose for engaging in the preoffense conduct? [*People v Steele*, 283 Mich App 472, 491; 769 NW2d 256 (2009) (citation omitted).]

All three parts must be met for there to be predatory conduct. Pursuant to this test, we have held that grooming supports the assessment of 15 points for OV 10. See *id*. at 491-492.

Contrary to defendant's arguments on appeal, there is a preponderance of the evidence that he engaged in predatory conduct before the offense of accosting the victim. As previously discussed, defendant engaged in grooming of the victim. Defendant knew about her crush on him, knew that she was depressed and vulnerable and he encouraged the relationship and manipulated and exploited her for his own gain. Although this case may have begun with a simple crush, defendant's conduct led to the victim eventually believing that the two were a couple and led her to entertain the idea of engaging in sexual activity with defendant despite her age. This was predatory grooming activity in which defendant was preparing the victim for the subsequent offense of encouraging the victim to engage in immoral acts.

OV 19 concerns the "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. OV 19 requires that 10 points be assessed if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order." MCL 777.49(c). We have held that 10 points were properly assessed for OV 19 when the "defendant told his victims not to disclose his acts or he would go to jail." *Steele*, 283 Mich App at 492. We reasoned that the "[d]efendant's admonitions to his victims were a clear and obvious attempt by him to diminish his victims' willingness and ability to obtain justice." *Id*. at 493. In the present case, after the investigation began, defendant used a different phone, told the victim to store his phone number under a different name, and told the victim to delete their messages. Defendant also told the victim that they needed to "be discreet," to "play it safe," and to meet in secret at a nearby park. This conduct is analogous to the defendant's conduct in *Steele* and the assessment of 10 points under OV 19 is proper here.

For these reasons, we affirm the trial court's scoring of OV 10 and OV 19. However, at sentencing, the trial court clearly sentenced defendant "for a minimum term of 20 months, and a maximum of 48," but defendant's judgment of sentence listed a minimum of 21 months with a maximum of 48 months. There is no indication from the record as to why the one-month discrepancy exists, and, notably, the prosecution has chosen not to address or dispute defendant's position on appeal. To facilitate appellate review, a trial court must articulate on the record the reasons for a sentence it imposes. *People v Pena*, 224 Mich App 650, 661; 569 NW2d 871 (1997). The trial court gave a rationale for a sentence of 20 to 48 months but not for 21 to 48 months. Therefore, it appears to us that the judgment of sentence contains a plain error by imposing a more severe sentence without the proper articulation from the trial court. Therefore, we remand solely for the trial court to correct the judgment of sentence to provide that defendant's sentence is 20 to 48 months. See MCR 7.216(A)(7) (granting this Court power to "enter any judgment or order or grant further or different relief as the case may require").

III. CONCLUSION

Affirmed but remanded to the trial court for the ministerial task of correcting defendant's judgment of sentence. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan