*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
April 11, 2024

v

No. 361393
Montcalm Circuit Court
LC No. 2020-027067-FH

TERI MARIE MILLER,

        Defendant-Appellant.

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial convictions of embezzlement of a vulnerable adult in the amount of $50,000 or more but less than $100,000, MCL 750.174a(6)(a); embezzlement of a vulnerable adult in the amount of $1,000 or more but less than $20,000, MCL 750.174a(4)(a); using a computer to commit a crime, MCL 752.797(3)(d); three counts of retaining a financial transaction device without consent, MCL 750.157n(1); and failing to file tax returns, MCL 205.27(1)(a). The trial court sentenced defendant to prison terms of 57 months to 15 years for the embezzlement over $50,000 conviction, 14 months to 5 years for the embezzlement over $1,000 conviction, 36 months to 7 years for the using a computer to commit a crime conviction, 24 months to 4 years for each of the retaining a financial device convictions, and 27 months to 5 years for the failure to file tax returns conviction. The embezzlement under $1,000 sentence was to be served consecutively to the embezzlement over $50,000 sentence; the remaining sentences were concurrent with the embezzlement over $50,000 sentence. Defendant was also ordered to pay restitution. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of allegations that defendant embezzled money from an elderly woman, Glenna Cowles, for whom she had been hired to provide care from October 2016 until January 2018. In August 2016, Glenna moved into the home of her daughter, Elisabeth Riva, and son-in-

law, Tim Riva.[1] Elisabeth died unexpectedly in October 2016. Defendant, who is Tim's sister, subsequently moved into Tim's home to care for Glenna. Glenna and defendant agreed that Glenna would pay defendant $1,000 per month for defendant to provide care for Glenna. Glenna was hospitalized in January 2018. After she was released from the hospital, her brother Gilbert Godfrey took over her care and arranged for her to move into an assisted living facility; Godfrey also attained Glenna's power of attorney. After speaking to Glenna about her finances, Godfrey filed a complaint with the Michigan State Police that defendant had embezzled money from Glenna.

Investigators with the Michigan Attorney General's office investigated Glenna's financial records. The investigation revealed that there had been several payments made from Glenna's personal checking account and Discover credit card for defendant and her family members. Glenna had also given defendant access to her safe-deposit box, in which she kept cash at her bank; also, she had added defendant's name to the title of her car. Investigators interviewed defendant and she claimed that Glenna had authorized the payments.

When defendant was arrested by agents of the Attorney General's Office, she originally denied that she was Teri Miller; she also attempted to prevent the agents from entering her home and refused to comply with their commands, although she ultimately calmed down and submitted to the arrest.

Prior to her preliminary examination, the prosecution moved to permit Glenna to testify by remote videoconferencing software due to being under quarantine for possible exposure to the COVID-19 virus. Defendant objected; the trial court granted the prosecution's motion. Glenna testified remotely at defendant's preliminary examination and passed away before trial. Defendant then moved to exclude Glenna's preliminary examination testimony from admission at trial, arguing that it would violate defendant's right to confrontation. The trial court denied the motion. The trial court also denied the prosecution's pre-trial motion to exclude evidence related to the fact that Godfrey had been accused of embezzling money from his vulnerable brother-in-law; however, it cautioned defendant that any admissible evidence related to that alleged misconduct would be limited to the period overlapping defendant's alleged misconduct—late 2016 until January 2018.

At trial, defendant attempted to question Godfrey regarding his alleged embezzlement; however, the trial court sustained the prosecution's objection to this questioning, noting that defendant's theory was that Godfrey might have taken cash from the safe-deposit box after he gained access to it in January 2018, but that the charges in this case involved the time period prior to Godfrey obtaining such access.

At trial, defendant objected to the prosecution's attempted admission of evidence that she had attempted to flee or obstruct her arrest. The trial court overruled the objection. The jury was given an instruction concerning evidence of a defendant's flight.

Defendant was convicted and sentenced as described. This appeal followed.

---

[1] Several people involved with this case are related and have the same last names. Therefore, for the sake of clarity, we will use those individuals' first names.

## II. ADMISSION OF PRELIMINARY EXAMINATION TESTIMONY

Defendant argues that the trial court erred by admitting Glenna's preliminary examination testimony at trial. We disagree. "Whether a defendant was denied his right to confront a witness is a constitutional question that we review de novo." *People v Jemison*, 505 Mich 352, 360; 952 NW2d 394 (2020).

"The Sixth Amendment of the United States Constitution provides, in part, that [i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." *Id*. (quotation marks and citation omitted; alteration and ellipsis in original). See also Const 1963, art 1, § 20. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v Craig*, 497 US 836, 845; 110 S Ct 3157; 111 L Ed 2d 666 (1990). "Confrontation" consists of the following elements— "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact . . . ." *Id*. at 846. The combined effect of these elements ensures "that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." *Id*.

In *Craig*, the United States Supreme Court observed that the Confrontation Clause reflected a preference for face-to-face confrontation at trial; however, that preference "must occasionally give way to considerations of public policy and the necessities of the case." *Craig*, 497 US at 849 (quotation marks and citation omitted.). In that case, the Supreme Court concluded that in a child abuse case, testimony by child witnesses who testified via one-way closed-circuit television at the defendant's trial did not violate the defendant's right to confrontation:

> Because there is no dispute that the child witnesses in this case testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified, we conclude that, to the extent that a proper finding of necessity has been made, the admission of such testimony would be consonant with the Confrontation Clause. [*Id*. at 857.]

In a later case, *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the United States Supreme Court held that face-to-face cross-examination was required for testimonial evidence unless a witness was unavailable and the defendant had a prior opportunity for cross-examination. Testimony given at a preliminary hearing is testimonial. *Id*.

The Michigan Supreme Court has concluded that the United States Supreme Court in *Crawford* "shifted from a reliability focus to a bright-line rule requiring a face-to-face encounter for testimonial evidence." *Jemison*, 505 Mich at 356. The Court in *Jemison* held that the requirement for face-to-face confrontation while admitting testimonial evidence "may be dispensed with only when the witness is unavailable and the defendant had a prior chance to cross-examine the witness." *Id*. at 365-366.

In this case, there is no dispute that Glenna was unavailable at the time of trial. See MRE 804(a)(4). Therefore, her preliminary examination testimony would be admissible at trial as

long as she was subject to cross-examination during her prior testimony. *Jemison*, 505 Mich at 356; see also *People v Garland*, 286 Mich App 1, 6-7; 777 NW2d 732 (2009).

Defendant argues that she was unable to properly cross-examine Glenna at the preliminary examination because Glenna had appeared via remote videoconferencing software. We disagree. The record shows that defense counsel cross-examined Glenna over a period spanning two days. Defense counsel asked Glenna to review copies of a series of cashed checks from her personal banking account and to determine whether she had authorized payment of those funds. At trial, jury members were given copies of the exhibits so that they could follow along with Glenna's testimony. Defendant has not explained what additional questions or topics she wanted to raise with Glenna that were not addressed at the preliminary examination. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) (quotation marks and citation omitted). The record supports the conclusion that Glenna was subject to full cross-examination. *Jemison*, 505 Mich at 356.

Further, to the extent that defendant argues that the trial court necessarily erred by admitting Glenna's preliminary examination testimony because that testimony itself was the product of an error by the district court in allowing her to testify remotely, we disagree. There is no dispute that at the time of the preliminary examination, Glenna was under COVID-19 quarantine at an assisted living facility. At the time, Administrative Order No. 2020-6 was in effect, requiring judges in Michigan to make a good faith effort to conduct proceedings remotely whenever possible. Additionally, at the time of the preliminary examination in this case— October 2020, MCR 6.006(B) provided the following:

> As long as the defendant is either present in the courtroom or has waived the right to be present, on motion of either party, district courts may use telephonic, voice, or video conferencing, including two-way interactive video technology, to take testimony from an expert witness or, upon a showing of good cause, any person at another location in a preliminary examination. [Adopted July 13, 2005, effective January 1, 2006, 473 Mich xlix (2005).]

Considering the circumstances, the district court did not err by allowing Glenna to testify remotely at the preliminary examination. The administrative order required trial courts to attempt to hold proceedings remotely in response to the COVID-19 pandemic. Moreover, Glenna was under quarantine at an assisted living facility because someone at the facility had tested positive for COVID-19. The district court did not restrict either party's ability to provide Glenna with exhibits for review during the examination, or otherwise limit defendant's ability to cross-examine her.

Defendant further argues that the district court violated MCL 766.11a by allowing Glenna to testify remotely despite being the complaining witness in the case. We disagree. MCL 766.11a provides:

> On motion of either party, the magistrate shall permit the testimony of any witness, except the complaining witness, an alleged eyewitness, or a law enforcement officer to whom the defendant is alleged to have made an

-4-

incriminating statement, to be conducted by means of telephonic, voice, or video conferencing. The testimony taken by video conferencing shall be admissible in any subsequent trial or hearing as otherwise permitted by law.

As an initial matter, defendant did not argue that allowing Glenna to testify by video at the preliminary examination would violate MCL 766.11a in the district court. She did not raise this challenge until she sought to preclude the testimony from being admitted at trial in the circuit court.

Nonetheless, as previously discussed, the video testimony was permitted by AO 2020-6. The Michigan Supreme Court is empowered to "establish, modify, amend, and simplify the practice and procedure in all courts of this state." Const 1963, art 6, § 5. "This is generally accomplished by the issuance of administrative orders and the promulgation of court rules." *People v Taylor*, 510 Mich 112, 129 n 11; 987 NW2d 132 (2002). Moreover, Glenna's testimony was permitted by MCR 6.006. To the extent that MCL 766.11a conflicts with the court rule, "[i]n general, when a court rule conflicts with a statute, the court rule controls when the matter pertains to practice and procedure . . . ." *Stenzel v Best Buy Co*, 320 Mich App 262, 279; 906 NW2d 801 (2017).[2]

Accordingly, the district court did not err by allowing Glenna to testify by video at the preliminary examination. Moreover, because Glenna was unavailable at the time of trial and defendant had the opportunity to cross-examine her, the trial court's decision to allow her preliminary examination testimony to be admitted at trial did not violate defendant's right to confrontation.

## III. OTHER-ACTS EVIDENCE

Defendant also argues that the trial court abused its discretion by denying her request to present evidence concerning embezzlement allegations against Godfrey. She further argues that the exclusion of this evidence deprived her of her right to present a defense. We disagree.

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "However, whether a

---

[2] Although we need not definitively interpret the language of MCL 766.11a to resolve this issue, we note that the plain language of the statute requires that the district court *shall* permit the testimony of any witness to be provided by video conferencing with three exceptions: the complaining witness, an alleged eyewitness, or law enforcement officer to whom the defendant is alleged to have made an incriminating statement. In other words, statute *prohibits* the district court from excluding the video testimony of witnesses whom do not fall into those three categories. It does not necessarily follow that the the statute completely prohibits a district court from *allowing*, in its discretion, the three categories of witnesses to testify via video conference at the request of either party. See *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008) (explaining that the term "shall" is clearly mandatory, while the term "may" is typically permissive).

rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Id.* "A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law." *Id.* "This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

Other-acts evidence is governed by MRE 404.[3] Generally, MRE 404(b) prohibits evidence of other crimes, wrongs, or acts to prove that an individual has a propensity to commit such acts. *Denson*, 500 Mich at 397. However, evidence of other acts may be admissible for other purposes. At the time of defendant's trial, MRE 404(b)(1) provided:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"This Court has previously held that [MRE 404(b)(1)], applies to the admissibility of evidence of other acts of any person, such as a defendant, a victim, or a witness." *People v Catanzarite*, 211 Mich App 573, 579; 536 NW2d 573 (1995). In *People v Vandervliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), the Michigan Supreme Court articulated the following test for the admission of other-acts evidence:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

"Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Denson*, 500 Mich at 401. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *Id.* (quotation marks and citation omitted). In other words, the fact to be proven must truly be at issue. *Id.* "Evidence is probative if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* at 401-402 (quotation marks and citations omitted).

In this case, from the information available in the record, it appears that Godfrey was a caregiver for his brother-in-law at some point and that he continued to receive his brother-in-law's Social Security checks even after the brother-in-law was no longer living at Godfrey's home. The

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

prosecution told the trial court that charges against Godfrey related to this had been dismissed. Defendant argues that this evidence was relevant because it could support the theory that Godfrey took money from Glenna's safe deposit box after he gained access to it, contrary to the prosecution's claim that it was defendant who took money from the box. We disagree. Even if defendant's assertion that Godfrey took money out of the safe-deposit box after he obtained access to it in January 2018 is correct, defendant was not accused of taking any money or even accessing the box in or after January 2018. There was contradictory testimony concerning the amount of the money in the box. The box was closed and emptied before investigators became involved. It is possible that both defendant and Gilbert (or even unidentified third parties) took money from the box. In other words, the fact that Gilbert may have taken money from the box after he obtained access to it would not make it more or less probable that defendant had previously taken money from the box, that she failed to put money into the box (as she claimed to have done), or that she wrongfully obtained money from Glenna by other means. See MRE 401. Accordingly, the trial court did not err by excluding this evidence. See MRE 103(a).

Defendant further argues that the trial court violated her right to present a defense by not allowing the admission of this evidence. We disagree. "A criminal defendant has a due process right to present a defense under the state and federal constitution." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016). However, that right is not absolute. *Id*. "The defendant must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. (quotation marks and citations omitted). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *Id*. (quotation marks and citation omitted). However, because the proposed evidence was irrelevant and, therefore, inadmissible, the trial court's decision to exclude this evidence did not violate defendant's right to present a defense. See *id*.

## IV. DEFENDANT'S ARREST

Defendant also argues that the trial court abused its discretion by allowing testimony that she attempted to flee or resisted arrest. We disagree. As stated earlier, "[a] trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *Denson*, 500 Mich at 396.

"It is well established in Michigan law that evidence of flight is admissible." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). "Such evidence is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction." *Id*. The term "flight" includes actions such as "fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id*. "[I]t is always for the jury to determine whether evidence of flight occurred under such circumstances as to indicate guilt." *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008).

In this case, defendant argues that evidence that she attempted to flee or resisted agents when they came to her home to arrest her is other-acts evidence under MRE 404(b). According to defendant, such evidence was inadmissible because the prosecutor failed to provide the requisite notice, the evidence was not probative, and it was substantially prejudicial. This Court has considered and rejected a similar argument. In *Coleman*, 210 Mich App at 5, the defendant argued that "because the admission of evidence of other criminal activity is strictly limited by

MRE 404(b), the trial court erred in allowing the jury to learn of the criminal acts committed by defendant in the course of his escape" from the officers sent to arrest him. *Id*. This Court held that admissibility under MRE 404(b) was not dispositive of the admissibility of evidence of flight, noting that "[e]vidence that is admissible for one purpose is not inadmissible because its use for a different purpose is precluded." *Id.* Therefore, the fact that this evidence would be inadmissible if offered to prove defendant's conformity with other bad acts or bad character does not prevent the evidence from being admitted to show her consciousness of guilt.

Further, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). In this case, the trial court properly instructed the jury to only consider this evidence for proper purposes. *People v Mardlin*, 487 Mich 609, 619; 790 NW2d 607 (2010). The jury was provided the following instruction:

> There's been some evidence that the defendant tried to run away or tried to hide after the police tried to arrest her.

> This evidence does not prove guilt. A person may run or hid[e] for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of consciousness of guilt.

> You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind. [See M Crim JI 4.4.]

"[J]urors are presumed to follow their instructions." *Unger*, 278 Mich App at 235. See *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000). The trial court did not abuse its discretion by admitting evidence concerning defendant's arrest.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young